UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

              -against-                              04 Cr. 790 (CBA)(CLP)

                                                      **DECLARATION**
                                                      **BRIAN GARDNER**

LARRY STATHAKIS,
                           Defendant
            -and-
JOHN ZAPAS
                         Surety.

----------------------------------X

        Brian Gardner declares as follows:

        1.     I am a member of the law firm of Sullivan Gardner PC. We have acted as counsel for defendant in the above-captioned criminal matter, although defendant had separate trial counsel of Mr. Carnesi and Mr. Ginsberg. As such I have personal knowledge of the facts contained in this declaration.

        2.     I submit this declaration in opposition to the government's application to forfeit bail against both defendant and the surety, John Zapas ("Zapas"), a friend of the defendant's. Mr. Ginsberg recently submitted an opposition letter to the government's application and we have been asked by Zapas to supplement the opposition on his behalf.

        3.     The government's desired relief, (as I believe they would acknowledge), is unusual and rarely sought. They seek forfeiture of a bail bond although the defendant never missed an appearance date and has been incarcerated for many months at the time of this application.

Preliminary Statement

4. The sole basis for the application is that the defendant was found to have violated the added condition of bail that he not speak to potential witnesses. Based upon this alleged violation they seek forfeiture and judgment on the $5,000,000 bond against both the surety and defendant, although the surety was: i) not present when this condition was added; ii) did not consent to the condition; iii) would not have agreed to continue as a surety with this condition; and iv) did not assist in the bail condition violation in any manner. It is truly a rare and draconian application.

5. A number of days ago Zapas submitted a *pro se* declaration opposing the application. At that time he was unsure if he would be able to retain our services to supplement opposition papers on his behalf. His declaration is entirely unedited by us. Upon reviewing the matter and speaking to the government regarding its application we felt compelled to submit papers on behalf of Zapas, believing the government's conduct to truly be overreaching, legally incorrect and constitutionally unfair. (Zapas discusses the issue of our potential representation in his declaration, and raises concerns about his ability to pay, which we have agreed to resolve otherwise with him.) Zapas' unedited and unrevised *pro se* declaration is annexed hereto as Exhibit A. Although it is not as refined as other declarations submitted to the Court, it explains the history of the action, the hardship the bond has already caused him, and the lack of awareness or agreement to the added condition of bail of not speaking to any potential witnesses. We submit it has weight both on the issue of forfeiture, and in the event forfeiture occurs it should be set aside, in that justice does not require such forfeiture. Fed. R. Crim. P. 46 (f)(2)(B).

6. We respectfully submit that the government's application must be denied. Defendant's bail conditions were materially altered a number of times without consent or notice to Zapas. Most dramatically on November 21, 2006, some nine months after the defendant's initial release and the surety agreement, as a result of a government application Judge Bloom ordered that defendant is not permitted to speak to any potential witnesses. The surety cannot, and should not, be held accountable for an alleged violation of that condition. Nevertheless should the Court determine that forfeiture is appropriate pursuant to Fed. R. Crim. P. 46(f)(2)(B), the full amount should be remitted.

Procedural and Factual History

7. This is an over handed application by the government in a matter that has been fraught with government oddities. On February 14, 2006, after having been indicted while in Greece, Defendant returned to the United States with the understanding that he would cooperate against a law enforcement officer who was attempting to extort money from him to allegedly influence this case. After much effort at secrecy the cooperation was ruined by the government leaking pertinent and critical information. After this admitted error on the government's part, defendant was arraigned and released on the subject $5,000,000 bond, over the government's strong objection. The release was premised largely on the strength of Zapas as a surety and property he utilized to secure the bond worth approximately $3,000,000.

8. The subject bond and release order were issued by Judge Levy on February 17, 2006, a copy of which is annexed hereto as <u>Exhibit B</u>. Zapas was present and executed the Appearance Bond on that day. This bond is the only agreement entered into by Zapas to act as a surety. Nowhere does this bond contain the condition that

3

defendant not speak to witnesses or potential witnesses, nor was defendant so instructed during the bail appearances (bail hearings held on the 16th and 17th of February 2006, the transcripts of which are annexed hereto as Exhibit C; statement by Judge Go in revoking bail that no such condition existed in the original order of release and bond, February 5, 2007 hearing, p. 4, annexed hereto as Exhibit D[1]).

9. The bond contains the Additional Condition of Release that defendant shall avoid contact with co-defendants (only "Co-defts" is handwritten on the line for people to not contact). This was the only prohibition on contact in the original release bond. (*See*, Exhibits B and D.) Additionally, the defendant was placed on home detention with electronic monitoring, the only exception being for attorney visits and medical emergencies (this exception is hand-written in, but is also part of the standard "Special Conditions of Release" on the reverse side of the bond for home detention). Unarguably, no condition existed as to the original bond or release that defendant not speak to witnesses or potential witnesses.

10. The condition that Zapas was clearly aware of was that defendant must appear as required. Although we submit that the government's application must be denied since Zapas did not consent or agree to the added bail condition of not speaking to witnesses, it is worth noting that he was never instructed that the bond could face forfeiture for any other reason than failure to appear.[2]

---

[1] The full transcript of the February 5, 2007 hearing is annexed to the declaration of AUSA Spector. For the sake of brevity, only the cited pages are annexed here.
[2] While Zapas understood that the defendant could be returned to jail if he violated the bond, e.g., home detention or contacting co-defendants, he did not understand that this placed him at risk of a $5,000,000 forfeiture and judgment nor was he so instructed (Exhibit A at ¶¶ 29-31; Exhibit C (evidencing no instruction to Zapas on if the defendant violates conditions of bail)). Zapas, in his declaration, describes that he signed the bond under the specific heading "Appearance Bond" rather than under the release conditions portion (Exhibit A at ¶¶ 34-42).

4

11. At various times after the bond was issued we requested modification of the bail conditions on behalf of defendant. These initially included allowing him to leave home detention to work, travel and go to religious services. Eventually, due to his continued exemplarily behavior while on bail, the entire home detention condition was lifted with the consent of pre-trial services and without objection from the government. Defendant continued on bail without event.

12. It was not until November 21, 2006, only about two weeks before the trial was to begin in this matter, that the government brought an application to revoke bail based on defendant's contact with a potential government witness. On that date, Judge Bloom held a bail revocation conference/hearing and, all parties agreed, determined that bail would not be revoked, but defendant was strongly admonished "not to speak with any potential witness in the case."[3] I represented defendant at the bail hearing before Judge Bloom. Zapas was not present during the hearing, and was not otherwise asked to consent or agree to this condition. The government indicated they would appeal the decision to Judge Amon, but no appeal occurred.[4]

13. Regardless, Zapas absolutely did not, and would not have, consented or agreed to it, this added bail condition, as stated in ¶2 of his second declaration which is annexed hereto as Exhibit E.

14. On February 2, 2007, (approximately one year after defendant's initial release), the government again moved to revoke bail. On February 5, 2007 a hearing was held before Magistrate Judge Go, who was also picking a jury in this matter on that day.

---

[3] Quoting Judge Go's statement of what Judge Bloom ordered, written decision revoking bail annexed hereto as exhibit F.
[4] We note it was always unclear to us whether Judge Bloom had the authority to proceed with a revocation hearing and/or to alter the conditions of bail. The application was directly made to the "emergency" magistrate judge rather than to the District Court handling the criminal matter. Upon further reflection it appears Judge Bloom did not have the authority to add this condition, as discussed herein.

5

Judge Go issued a written decision revoking bail on February 8, 2007 (a copy of which is annexed hereto as <u>Exhibit F</u>). The court first correctly noted the relevant law under 18 U.S.C. § 3182 that a District Court may revoke an order of release, if after a hearing, it finds either probable cause to believe defendant committed a crime while on release or clear and convincing evidence that the person has violated any other condition of release, and makes the additional finding required by subsection 2. Judge Go then found "by clear and convincing evidence based on the Government's submission and the testimony taken that defendant twice violated the condition of release imposed by Magistrate Judge Bloom at a revocation hearing held on November 21, 2006 not to speak with any potential witness in the case." (Exhibit F at p. 2). Judge Go based this decision on what she stated was an admitted conversation with Michael Sideris and an attempted call to Costas Philippou, two people who she stated were potential witnesses.[5] Judge Go repeatedly reiterates that her determination is based upon the release condition added by Judge Bloom on November 21, 2006 and not the conditions of the original release order (*See, e.g.*, Exhibit D at pp. 2, 4, 5, 19).

15. On April 19, 2007, the government moved for bail forfeiture and entry of a judgment on the bond with supporting brief declaration of AUSA Spector. The government merely recites its revocation attempt and success before Judges Bloom and Go, respectively, and then states as its sole support for the sought relief that "Magistrate Judge Marilyn Go held that there is clear and convincing evidence that [Stathakis] violated Judge Bloom's order for release." (¶ 8 of the Spector Declaration, internal quotations omitted).

---

[5] Judge Go specifically stated she was not making a finding regarding whether probable cause existed that the defendant committed the crime of witness tampering. (Exhibit F at p. 3).

16. Accordingly, since the sole premise for the government's present application to forfeit bail and enter judgment on the bond is the allegation that the defendant violated the bail condition added by Judge Bloom, to not speak with potential witnesses, and Zapas was not a party, nor in any other manner did he agree to be a surety with that added condition, the application must be denied.

17. As to the defendant, and applicable to Zapas, we raise for the Court the issue that Judge Bloom seemingly acted beyond her authority in imposing this additional condition and Judge Go acted beyond her authority in revoking bail. As Judge Go correctly noted in her decision it is the District Court that is granted the authority to revoke bail under 18 U.S.C. § 3182.

Legal Argument

I. <u>Zapas Cannot be Bound or Penalized By An Added Bail Condition Imposed Without His Knowledge or Consent</u>

18. The government has incorrectly sought to forfeit bail and enter a judgment on the bond as against both the defendant and the surety. Again, the basis for the government's application is that the defendant violated a condition of his bail which was added about nine months after his original release. The surety Zapas did not agree to act as a surety under this new condition and obligation. As such, the surety was not, and should not be, bound by the added condition. Forfeiture is wholly improper as against Zapas. Moreover, as defendant is incarcerated, has been for some time, and never failed to appear bail should be exonerated. Alternatively, bail should be fully remitted for Zapas and/or defendant under Fed. R. Crim. P. 46(f)(2).

19. "An appearance bond is nothing more than a contract between the government on one hand and a principal and his surety on the other….[a]s a general rule

the terms of a bail contract are to be construed strictly in favor of the surety, who may not be held liable for any greater undertaking than he has agreed to." United States v. Miller, 539 F. 2d 445 ( 5th Cir. 1976). We submit it is so self-evident that it is awkward to have to state that bail cannot be forfeited against a surety for conditions of bail that wree not agreed to by the surety. The Ninth Circuit addressed this issue directly in United States v. LePicard, 723 F.2d 663 (9th Cir. 1984). That court reviewed a situation where a "break no laws" provision was added as a bail condition after the sureties executed the bond in a different court. The court in explaining that such circumstances involve obligations not agreed to by the sureties stated: "the Government has offered no authority, and we have found none, holding that unilateral action by the magistrate can impose on the bail surety such a new and different obligation. Under these circumstances, the surety would seem to have a right to stand upon the very terms of their undertaking." *Id.* at 665, *citing* Rees v. United States, 76 U.S. 13 (1869).

20. The LePicard court went on to further explain that: "because we hold that the sureties were not bound by the condition added by the Arizona magistrate, we need not decide whether the district court abused its discretion by failing to remit all or part of the forfeiture." The court concluded: "The sureties here gave a bond to guarantee the defendant's appearance before the court, not his good conduct. They were not bound by the later condition, imposed without their knowledge or consent, that the defendant break no local, state or federal laws." *Id.* at 666.

21. The Fifth Circuit has noted its agreement with this seemingly self-evident matter in United States v. Vaccaro, 51 F.3d 189, 193 (5th Cir. 1995), when it stated "…forfeiture is appropriate for violation of a release condition only if the parties have

8

agreed to the condition." Further, the Second Circuit has long articulated the position that: "The law is clear that sureties must be released from the bond where the Government materially increases the risk to the sureties without their notice and consent." United States v. Martinez, 151 F.3d 68, 72 (2d Cir. 1998).[6]

22. Your Honor correctly recognized these principles on September 27, 2006 at a hearing denying a bail application brought by the defendant to remove a property owned by him from security for bail, stating "Because I would need him [Zapas] to approve of any modification of the bond since he will be essentially left holding the bag, if you will, where I can modify the bond." (The relevant page of the September 27, 2006 bail hearing transcript is annexed hereto as Exhibit G).

23. Therefore, although Fed. R. Crim. P. 46(f)(1) provides that "the court must declare the bail forfeited if a condition of the bond is breached," if the surety has not agreed to the breached condition, then they are not bound by it and forfeiture against the surety is not appropriate. United States v. LePicard, 723 F.2d 663, 665-667 (9th Cir. 1984); see also United States v. Vaccaro, 51 F.3d 189, 193 (5th Cir. 1995). Moreover, even was this not the case, under such circumstances as exists here Fed. R. Crim. P. 46(f)(2) would warrant the setting aside of any forfeiture as "justice does not require bail forfeiture."

24. Here, unequivocally Zapas did not execute a bond to guaranteeing that defendant would not speak to witnesses. He is not bound by this "later condition,

---

[6] Although not performing an exhaustive search, we did not locate any case in the Second Circuit forfeiting bail against a surety where the defendant was in custody and had never absconded.

imposed without his knowledge or consent" on the defendant.[7] As such, forfeiture as to Zapas is entirely inappropriate.

25. Clearly this change in the bail conditions so increased the risk to Zapas that his obligations were terminated, evidenced by this being the only bail condition violated. United States v. Martinez, 151 F.3d 68, 72 (2d Cir. 1998). Nevertheless, as the LePicard court unequivocally stated, in this type of circumstance an analysis of the increased risk need not occur, the overriding and basic principle is that the surety cannot be held to obligations he did not agree to. United States v. LePicard, 723 F.2d at 665 ("Here, however, the extent of the change in risk may not matter because the issue is not excuse, but whether an altogether different obligation… ever arose.").

26. Accordingly, the government's application to forfeit bail and enter judgment should be denied in its entirety as to surety Zapas. We respectfully submit that Zapas be relieved of his obligations as a surety, a satisfaction of judgment directed, and the bond as to Zapas deemed void.

II.  Setting Aside Forfeiture

27. Alternatively, if the Court determines forfeiture is required or appropriate pursuant to Fed. R. Crim. Proc. 46 (f)(1), we submit that it should, and must, be set aside pursuant to Rule 46 (f)(2) for all of the reasons stated above and for the reasons stated in the opposition letter submitted by Ginsberg.[8] Here, not only has the defendant surrendered into custody without ever having any issues with appearance, but as fully

---

[7] This condition, added some nine months later without his consent or knowledge, was certainly not agreed to by Zapas. Exhibit E at ¶ 2; United States v. LePicard, 723 F.2d 663, 666 (9th Cir. 1984).

[8] " In determining whether justice requires a forfeiture, a court must consider several factors including whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; any explanation or mitigating factors presented by the defendant; whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family."
Gambino, 17 F.3d at 574 (quoting United States v. Carvajal, 674 F. Supp. 973, 974 (E.D.N.Y. 1987))

discussed above the bail was revoked for violation of a condition Zapas did not consent to as a surety.

28. Moreover, as described by Judge Glasser in United States v. Gallego, 2003 U.S. Dist. LEXIS 2838, No. 02 CV 5987 (ILG), 2003 WL 1193536 (E.D.N.Y. Jan. 29, 2003), each of the following criteria weigh in favor of mitigation: i) Zapas was not a professional surety, but rather attempting to help a friend, (See, also, e.g., United States v. Carvajal, 674 F. Supp. 973, 974 (E.D.N.Y. 1987); ii) Zapas was in no way responsible for the bail condition violation; and iii) Zapas seemingly was never warned that violation of a bail condition, as opposed to the failure of defendant to appear, could result in forfeiture of the bond. A review of the original transcript from the bail hearing, (annexed hereto as Exhibit C), evidences a warning of possible forfeiture was not given to Zapas by the court taking the bond, (or any other court). At pg. 13 the court is warning that the government can take the full amount if the defendant "inaudible" (although obviously unclear it is at least as likely as not that it was a warning regarding absconding not violating conditions). Next, in stating that it will now give the "bail warnings" the court seems to expressly differentiate between the defendant and the surety. Although again there are two "inaudible" designations in the warning, the court states "You are responsible not only for your appearance in court, (inaudible) suretors are responsible, but you're responsible for following every condition…" (p. 26, of exhibit C). From this transcript it would appear that the court's warning to the surety regarding forfeiture was only for defendant's failure to appear.

29. Further, as to the defendant we only add to Ginsberg's letter opposition that he was out on bail for nine months as an exemplary release. He appeared each time at

11

the revocation hearing voluntarily, caused no substantial cost or harm to the government's case, nor was the violation explicit, i.e., one witness called defendant, and the other witness was never spoken to by defendant. Defendant has already suffered having his bail revoked and attempting to defend a trial while incarcerated, and is currently fighting a substantial criminal forfeiture proceeding. Moreover, although defendant was aware that he faced revocation of his release if he violated Bloom's condition not to speak to witnesses, it is not clear that he understood that to mean monetary forfeiture could also result.[9] Justice warrants setting aside a bail forfeiture for either Zapas or defendant.

Conclusion

For the foregoing reasons, we respectfully submit that the government's request for an order of forfeiture against the surety Zapas be denied, and an order that the bail be exonerated, the bond as to Zapas void, and a satisfaction of judgment provided for Zapas concerning the confession of judgment provided by him as part of the bond. Alternatively, we submit that any forfeiture should be set since justice certainly does not require such a forfeiture.

Annexed to this declaration are the following exhibits:

A. Declaration of John Zapas dated May 21, 2007

B. Order Setting Conditions of Release and Bond dated February 17, 2006

C. Transcripts of proceedings before Judge Steven M. Gold held on February 16 and 17, 2006.

---

[9] We do not have the transcript of Judge Bloom's bail hearing, and I do not have a recollection of whether the specific warning as to forfeiture was given. It was a revocation hearing, and the attention was naturally on revocation rather than forfeiture.

D.  Partial transcript of proceedings before Judge Marilyn D. Go held on February 2, 2007.

E.  Declaration of John Zapas dated May 24, 2007.

F.  Order Revoking Bail dated February 8, 2007.

G.  Partial transcript of proceedings before Judge Cheryl L. Pollak held on September 27, 2006.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information and belief.

Dated: May 24, 2007
       New York, New York

                                        SULLIVAN GARDNER PC

                                        By: _____
                                        Brian Gardner (BG 0006)
                                        Attorneys for Defendant
                                        475 Park Avenue So.
                                        New York, New York 10016
                                        (212) 687-5900