UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA

   - against -

LARRY STATHAKIS,

             Defendant,

   - and -

JOHN ZAPAS,

            Surety.
------------------------------------------------------X

**MEMORANDUM
AND   O R D E R**

04 CR 790 (CBA) (CLP)

On August 31, 2004, defendant Larry Stathakis was indicted on charges stemming

from an alleged mortgage fraud scheme. He remained a fugitive until his return from Greece

and his surrender on February 14, 2006. On February 17, 2006, Stathakis was released on a

five million dollar ($5,000,000) bond secured by three properties owned by John Zapas, who

signed as a surety on the bond. Following the revocation of Stathakis' bond on February 5,

2007, the government filed a motion dated April 19, 2007 seeking to forfeit the amount of the

bond pursuant to Rule 46(f)(1) and (3) of the Federal Rules of Criminal Procedure. For the

reasons set forth below, the government's motion is denied and the forfeiture is set aside.


## FACTUAL BACKGROUND

Defendant Stathakis was initially arraigned on the indictment before the Honorable

Robert M. Levy, United States Magistrate Judge,[1] on February 16, 2006. The bail hearing was

---

[1]Although the transcript of proceedings reflecting the February 17, 2006 hearing indicates
that the hearing was held before the Honorable Steven M. Gold, United States Magistrate Judge,

continued until February 17, 2006, at which time Judge Levy set certain conditions of release. After careful consideration, the Court released defendant on a $5,000,000.00 personal recognizance bond secured by the signatures of defendant's wife, Irene Stathakis, and a friend, John Zapas, who posted three properties[2] valued at approximately $3,500,000.00 in total. (Feb. 2006 Tr. at 26-27; see also Bond[3] at 1). Stathakis' release was subject to certain conditions, including home detention with electronic monitoring to be paid for by him,[4] surrender of his passport, no contact with his co-defendants, and supervision by pre-trial services, including random home visits. (Id. at 26-27; see also Bond at 1). In advising the sureties of their responsibility under the Bond, the Court stated as follows:

> Your liability is joint and several which means that each one of you is liable for the full amount of the bond should the defendant [inaudible]. And the government could choose to take the full $5 million from any one of you or take as much as they can or as much as it wishes [inaudible].

(Feb. 2006 Tr. at 13).

---

this appears to be a typographical error and it is clear from the Court docket and from the signature on the bond that Judge Levy presided over the February 17, 2006 proceedings. (See Transcript of Proceedings, dated February 17, 2006 (" Feb. 2006 Tr.")).

[2]The three properties include the premises and real property located at 131-56 40th Road, Flushing, New York; the premises and real property located at 131-50 40th Road, Flushing, New York, and the premises and real property located at 144-28 217th Street, Whitestone, New York. (Declaration of Daniel Spector, Assistant United States Attorney, dated April 19, 2007 ("Spector Decl.") ¶¶ 3-5).

[3]All references to "Bond" refer to the Bond executed by defendant on February 17, 2006, setting the conditions of release.

[4]Shortly after his release, defendant's bond was modified to allow him to leave his home to work. (See Transcript of Proceedings, dated November 21, 2006 ("Nov. 2006 Tr.") at 7).

In November 2006, the government filed a motion seeking to have the Bond revoked based on allegations that Stathakis had been in contact with a government witness and attempted to "corruptly influence [the witness'] testimony." (Nov. 2006 Tr. at 4). A bond revocation hearing was held before the Honorable Lois Bloom, United States Magistrate Judge, on November 21, 2006, at which time Stathakis, in response to the government's allegations, not only disputed the government's characterization of what had transpired with the witness, but asserted that he had never been advised "not to speak to witnesses, only not speak to co-defendants . . ." (Id. at 9). The Court ultimately denied the government's application to revoke bail,[5] instead tightening the defendant's work conditions by imposing a curfew. (Id. at 28-32). Although Judge Bloom commented that as a general matter the admonition not to commit another crime or interfere with witnesses was "part of any bail warning" (id. at 10), she explicitly warned the defendant that "he can't speak to any witnesses or people that he thinks might be witnesses period, end of story." (Id. at 23).

The surety, Mr. Zapas, claims that even though the conditions of defendant's bond were addressed and materially modified at this hearing, he was not present at the hearing, nor was he given notice of the proceeding or made aware of the new conditions set by the Court thereafter. (Zapas May Decl.[6] ¶¶ 44-50). He also contends that had he been aware of this

---

[5]In denying the government's request to revoke bail, the Court noted that there was an upcoming trial date and she focused on the fact that even though the contact between the defendant and the witness had occurred in August or September 2006, the government had not moved to revoke bail until late November 2006. (Id. at 19-23). In the interim, there was no evidence of any further misconduct on the part of the defendant. (Id.)

[6]Citations to "Zapas May Decl." refer to the Surety's pro se Declaration in Opposition to the motion to forfeit the bond, filed May 21, 2007.

condition, he would not have consented to the modification.  (Gardner Decl.,[7] Ex. E ¶ 2).

In a bond revocation hearing held before the Honorable Marilyn D. Go on February 2, 2007, the government moved a second time to revoke the Bond, alleging that the defendant had once again attempted to tamper with a witness.  By Order dated February 8, 2007, Judge Go ordered that the defendant's Bond be revoked and that he be remanded into federal custody based on her finding "by clear and convincing evidence . . . that defendant twice violated the condition of release imposed by Magistrate Judge Bloom at a revocation hearing held on November 21, 2006 not to speak with any potential witness in the case."  (Feb. 2007 Tr. at 19).[8]  Pursuant to the Court's Order revoking bond, the government filed this motion on April 19, 2007 seeking forfeiture of the properties posted as security by Mr. Zapas, and entry of judgment by default against defendant and his surety.  Mr. Zapas, proceeding pro se, filed a response to the government's motion on May 21, 2007.  In his response, he asserted that "the Appearance Bond I signed in court was only conditioned upon defendant's appearance and nothing else."  (Zapas May Decl. ¶ 31).  He further stated that he was not given notice of and did not consent to the condition added by Judge Bloom at the November 21, 2006 hearing. (Id. ¶ 45; Gardner Decl. Ex. E ¶ 2).  In the subsequent declaration filed on his behalf by defendant's counsel, Mr. Zapas requests inter alia that the Court deny the government's

---

[7]Citations to "Gardner Decl." refer to the Declaration of Brian Gardner, Esq. filed May 24, 2007.

[8]Citations to "Feb. 2007 Tr." refer to the transcript of proceedings before the Honorable Marilyn D. Go on February 2, 2007, attached as Exhibit D to the Declaration of Brian Gardner, Esq., dated May 24, 2007 ("Gardner Decl.").

motion, relieve him of his obligations under the Bond, and provide a satisfaction of judgment concerning the confessions of judgment provided by Mr. Zapas in connection with the Bond. (Gardner Decl. at 12).

For the reasons set forth below, the government's motion to forfeit the bond is denied and the request of Mr. Zapas to set aside the forfeiture, pursuant to Rule 46(f)(2)(B) of the Federal Rules of Criminal Procedure, is granted.

## DISCUSSION

A. Bond Forfeiture

Under Section 3148(b) of the Bail Reform Act, the district court may, after a hearing initiated by the government, revoke the bail of a person free on bond if the court finds: "1) either probable cause to believe that the defendant has committed a Federal, State or local crime while on release, or clear and convincing evidence that he has violated any other condition of his release, and 2) either that there are no combination or conditions of release that will prevent the defendant from fleeing or posing a danger to the safety of any other person or the community or that the person is unlikely to abide by any condition or combination of conditions of release." United States v. Santiago, 826 F.2d 499, 504 (7th Cir. 1987) (citing 18 U.S.C. § 3148(b)).

Forfeiture proceedings are governed by Rule 46(f) of the Federal Rules of Criminal Procedure, which provides that "[t]he court must declare the bail forfeited if a condition of the

bond is breached." Fed. R. Crim. P. 46(f)(1).[9] Even though a bond forfeiture arises in the context of a criminal proceeding, enforcement of the conditions of the bond through a forfeiture proceeding is considered a civil action. See United States v. Vaccaro, 51 F.3d 189, 191 (9th Cir. 1995) (citing United States v. Plechner, 577 F.2d 596, 597 (9th Cir. 1978)).

It is clear that "a bail bond agreement is a contract between two parties: the government and the surety on behalf of the criminal defendant." United States v. Santiago, 826 F.2d at 502. See also United States v. Vaccaro, 51 F.3d at 192 (stating that "[a] bail bond is a contract between the government and the defendant and his surety") (quoting United States v. Plechner, 577 F.2d at 598). Bond forfeiture is regarded as a form of liquidated damages. United States v. Ngyuen, 279 F.3d 1112, 1117 (9th Cir. 2002). See also United States v. Toro, 981 F.2d 1045, 1048 (9th Cir. 1992); United States v. Cervantes, 672 F.2d 460, 463 (5th Cir. 1982). If there is a forfeiture, the surety becomes a debtor of the United States. See United States v. Santiago, 826 F.2d at 502. Thus, the language of the bond is strictly construed in accordance with its contractual provisions, see United States v. Lujan, 589 F.2d 436, 438 (9th Cir. 1978), cert. denied, 442 U.S. 919 (1979), and accordingly, forfeiture "is appropriate for violation of a release condition only if the parties have agreed to the condition." United States v. Vaccaro, 51 F.3d at 193.

---

[9]Although the Second Circuit has not addressed the question of whether the district court must hold a hearing when requested by the surety, most courts have found the decision to be discretionary, depending upon the adequacy of the documents submitted in support of the motion. See United States v. Gambino, No. 88 Cr. 919, 1993 WL 300048, at *4 (S.D.N.Y. Aug. 5, 1993). In this case, believing that a hearing would be useful in the Court's analysis of the events leading up to the forfeiture proceeding, this Court held a hearing on August 2, 2007, at which time all parties were given an opportunity to be heard.

Although some have argued that the Bail Reform Act of 1984, 18 U.S.C. § 3141, implicitly repealed the broad authority provided to the district court by Rule 46(f)(2), and that under Section 3146(d), bail "may" be forfeited only if the defendant fails to appear, courts in this Circuit and others have rejected the argument that the Bail Reform Act limited the courts' authority to forfeit property only to those instances where the defendant fails to appear.[10] See United States v. Gigante, 166 F.R.D. 3, 5 (E.D.N.Y. 1996); see also United States v. Vaccaro, 51 F.3d at 192; United States v. Dunn, 781 F.2d 447, 451-52 (5th Cir. 1986). Instead, the majority of courts have concluded that forfeiture of the bond under Rule 46(f) is an appropriate sanction for the violation of any condition of release, whether that condition relates to the defendant's appearance in court or not. See, e.g., United States v. Dudley, 62 F.3d 1275, 1278 (10th Cir. 1995); United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991); United States v. Santiago, 826 F.2d at 499. Specifically, courts have upheld forfeiture for violation of the "break no laws" condition of a bond, see United States v. Vaccaro, 51 F.3d at 192 (citing United States v. Santiago, 826 F.2d at 505), and for violation of travel restrictions. See United States v. Terrell, 983 F.2d 653, 654 (5th Cir. 1993); United States v. Dunn, 781 F.2d at 451-52.

Under Rule 46(f), the court may set aside "in whole or in part" a bail forfeiture upon

---

[10]While the Bail Reform Act provides that the court "may" forfeit bail, 18 U.S.C. § 3146(d), Rule 46(f)(1) contains the word "must," making it seem as though forfeiture is mandatory under the Rule. This Court has also rejected the argument that the standards under the Bail Reform Act and Rule 46 are different, noting that subsection (f)(2) gives the Court discretion to set aside the forfeiture "'in whole or in part.'" United States v. Gigante, 166 F.R.D. 3, 5 (E.D.N.Y. 1996) (quoting Fed. R. Crim. P. 46). Thus, under both the Bail Reform Act and Rule 46, the Court has discretion to set aside a forfeiture. Id.

conditions imposed by the court if either the surety surrenders the defendant, Fed. R. Crim. P. 46(f)(2)(A), or "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2)(B). Similarly, the court may remit a forfeiture judgment under the same conditions specified in Rule 46(f)(2). See Rule 46(f)(4). In making the decision as to what, if any, part of the forfeiture to set aside, the court has an obligation to strike a balance between the competing interests of cost to the government and deterrence to defendants and sureties. See United States v. Sharrocks, No. 87 Cr. 031, 1989 WL 97890, at *16 (S.D.N.Y. Aug. 11, 1989); see also United States v. Green, No. 86 Cr. 288, 1989 WL 153042, at *4 (S.D.N.Y. Dec. 12, 1989) (partially remitting forfeiture despite finding that breach of bond conditions was willful, because cost incurred by government in apprehending defendant was insubstantial and no other prejudice to government was established).

The burden of establishing that "justice does not require bail forfeiture" under Rule 46(f)(2)(B) rests with the party seeking to challenge the forfeiture. United States v. Billini, No. 99 Cr. 156, 2006 WL 1586553, at *1 (E.D.N.Y June 8, 2006) (citing United States v. Gambino, 17 F.3d 572, 574 (2d Cir. 1994)). The Second Circuit has made it clear that it "will not reverse [the district court's finding] absent an abuse of discretion." United States v. Gambino, 17 F.3d at 574 (citing United States v. Peerless Ins. Co., 343 F.2d 759 (2d Cir.) (per curiam), cert. denied, 382 U.S. 832 (1965)). See also United States v. Gutierrez, 771 F.2d 1001 (7th Cir. 1985) (noting that the "decision whether to set aside . . . a forfeiture rests within the sound discretion of the district court and will be reversed only if the court acted arbitrarily or capriciously"). In United States v. Parr, the Fifth Circuit found that the district

court had abused its discretion in remitting only $35,000 of a $75,000 bond where the defendant had willfully failed to appear for a show cause order to terminate the bond and then committed suicide the next morning, forcing the government to spend $2,000 searching for him. 594 F.2d 440 (5th Cir. 1979) (reasoning that the purpose of a bail bond is to ensure the defendant's appearance, "not to enrich the government or punish the defendant . . . vindictiveness must play no part in measuring what is a just punishment for the defendant's default"). See also Appearance Bond Surety v. United States, 622 F.2d 334, 336-37 (8th Cir. 1980) (finding that justice required all but nominal amount of appearance bond be remitted where expense, inconvenience, and delay resulting from accused's failure to appear were minimal); Smaldone v. United States, 211 F.2d 161 (10th Cir. 1954) (reversing bond forfeiture where defendant failed to appear for trial because he was hospitalized with acute appendicitis requiring surgery).

In analyzing whether a forfeiture should be set aside, the court may consider the following factors: "whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; . . . any explanation or mitigating factors presented by the defendant; . . . whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family." United States v. Gambino, 17 F.3d at 574 (quoting United States v. Carvajal, 674 F. Supp. 973, 974 (E.D.N.Y. 1987)). See also United States v. Santiago, 826 F.2d at 505 (listing factors and citing United States v. Castaldo, 667 F.2d 20, 21 (9th Cir. 1981), cert. denied, 456 U.S. 978 (1982)). If the party moving for relief

from the forfeiture is the surety, the court may also consider "whether the surety is a professional bondsman or one of defendant's friends or family members, and the appropriateness of the amount of the bond." Id. at 506 (quoting United States v. Gutierrez, 771 F.2d at 1004).

Courts have held that a surety can be relieved of its obligations under a bond where "the government has materially increased the surety's risk without notice to and consent of the surety." United States v. Gambino, 17 F.3d at 574; see also United States v. Martinez, 151 F.3d 68, 72 (2d Cir. 1998); United States v. Zhang, No. 98 Cr. 1429, 2000 WL 1532951, at *2 (S.D.N.Y. Oct. 16, 2000). Indeed, forfeiture for breach of a condition imposed by the court without notice has been reversed. See United States v. LePicard, 723 F.2d 663, 665-66 (9th Cir. 1984) (reversing forfeiture of a bond where the "break no laws" condition was imposed on the defendant after the bond was posted, without the sureties' knowledge and consent). As the court in United States v. Miller noted, the "surety . . . may not be held liable for any greater undertaking than he has agreed to." 539 F.2d 445, 447 (5th Cir. 1976) (per curiam). This analysis is consistent with the Supreme Court's view that:

> There is . . . an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way . . . take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.

Reese v. United States, 76 U.S. 13, 22 (1869). Notice to and consent of the surety to additional or modified bond conditions do not always have to be directly proven; they can be inferred through circumstantial evidence. United States v. Gambino, 17 F.3d at 574 (internal

10

citation omitted).  Courts have held that such notice of material modification of bond conditions can be inferred when the surety is a family member of the bonded party.  See United States v. Zhang, 2000 WL 1532951, at *3-4 (noting that sureties who were family members residing with defendant were presumed to have notice of material modification of bond conditions).

B.  Application of Law

In the instant case, the government seeks forfeiture of the Bond on the grounds that defendant Stathakis violated one of the standard conditions of the Bond – namely, that he refrain from attempting to threaten or intimidate a witness.  (See Gvt. Reply Mem.[11] at 2 (citing 18 U.S.C. § 1512(a)(2) and (b)).  Looking to the five factors relevant in considering whether to set aside a bail forfeiture, the Court finds that the factors favor denial of the government's motion for forfeiture of the Bond.

With respect to the first factor – defendant's willful violation of a condition of the bond – the government argues that while on bond, Stathakis attempted to contact a prosecution witness, Costas Phillipou, in Cypress.[12]  The government further contends that

---

[11]Citations to "Gvt. Reply Mem." refer to the Reply Memorandum of Law in Support of Bond Forfeiture submitted by the government on July 18, 2007.

[12]Stathakis points out that originally the government charged Stathakis with contacting two potential witnesses.  (See Letter Brief dated May 14, 2007 and filed by defendant in opposition to the government's motion ("Stathakis' Letter of May 14, 2007") at 3).  At the bail revocation hearing before Judge Go, Stathakis admitted that he had spoken to the other witness, Mike Sideris, but, according to Stathakis, the evidence demonstrated that Sideris initiated the contact, not Stathakis, making the violation not willful.  (Id.)

11

law and told him that "'it wasn't a good idea for [Phillipou] to come to the United States'" and then suggested that there would be "'implications.'" (Gvt. Reply Mem. at 2-3 (quoting Feb. 2007 Tr. at 13)). The government contends that this conversation constitutes a violation of 18 U.S.C. § 1512 (a)(2), which prohibits any "threat of physical force" with an intent to "(A) influence . . . the testimony of any person in an official proceeding; [or] (B) cause or induce any person to – (i) withhold testimony . . . from an official proceeding." (Gvt. Reply Mem. at 2 (quoting 18 U.S.C. § 1512(a)(2)). The government also contends that Stathakis' actions violate 18 U.S.C. § 1512(b), which also prohibits the use of intimidation and threats to influence a witness' testimony in an official proceeding. (Gvt. Reply Mem. at 2). The government argues that because these actions violate standard conditions of the bond, an order forfeiting Zapas' properties should enter.

Stathakis argues that it is unclear whether he actually violated the conditions of the Bond. He points out that not only is it clear that he had no actual direct contact with Philippou, but the government's evidence was simply that someone who identified himself as "Larry from the United States" spoke to Mr. Pantelis, Philippou's son-in-law. (Stathakis' Letter of May 14, 2007 at 3). Defendant contends that the only evidence that he actually made the call is the testimony of Mr. Pantelis, who conceded that he had only met Stathakis on a few occasions five years earlier and had never spoken to him on the phone. (Id. at 3-4). Moreover, defendant notes that the telephone number provided by the caller was for a phone that did not accept incoming calls and the government never investigated or identified the

name of the subscriber of the phone from which the alleged threatening call was made. (Id. at 4). Judge Go, however, found that the evidence was sufficient to support a finding that defendant had "attempted" to "contact" a witness, and thus revoked his bail for violating the condition imposed by Judge Bloom. Thus, Judge Go's finding is sufficient to support the conclusion that defendant's conduct in violating the condition not to contact witnesses was willful.

As for the second factor, the government contends that it was forced to divert its resources toward pursuing these potential threats to its witnesses at a time when the government should have been preparing for trial. Stathakis, however, argues that there was no delay in the prosecution of the case; both witnesses appeared and testified for the government. Stathakis argues that at most, the breach caused the government to have to prepare "one brief letter" and attend a "short bail revocation hearing – neither of which . . . merits the forfeiture of Five Million Dollars." (See Stathakis' Letter of May 14, 2007 at 5 (citing United States v. Green, No. 86 Cr. 288, 1989 WL 153042, at *2-3 (S.D.N.Y. Dec. 12, 1989))). With respect to the third factor, defendant contends, and the government agrees, that it is irrelevant because Stathakis voluntarily appeared for the bond revocation hearing before Judge Go and the surety's assistance in apprehending the defendant was not necessary. As for the fourth factor, the government argues that Stathakis has offered no explanation for his violation of the Bond or any mitigating circumstances for the Court to consider in determining whether to forfeit the Bond. To the contrary, the defendant denies that he engaged in the conduct alleged by the government and points out the weakness in the government's evidence establishing that it was

in fact Stathakis who reached out to the witness in Greece. Moreover, Stathakis contends that the amount of the Bond actually exceeded what was necessary to secure his presence at trial, particularly in light of the fact that he returned voluntarily to the United States to answer the charges.

It is the final factor, however, that persuades the Court that in this instance justice requires setting aside the forfeiture pursuant to Rule 46(f)(2)(B). Mr. Zapas, although a "sophisticated real estate investor" (Gvt Reply Mem. at 5), is not a professional surety and signed only as a business acquaintance or friend of the defendant. Even if, as the government argues, he "clearly understood what it meant to encumber his properties," there is no evidence that he was familiar with the conditions set forth on the back of the bond form or, more important, that he understood that contacting witnesses would be considered a violation sufficient to result in forfeiture of the Bond. Indeed, there is some question, based on Judge Levy's warning to the surety, as to whether Judge Levy intended mere contact with a witness to constitute a condition of the Bond. Nowhere in his allocution of the surety or even in his warnings to the defendant did Judge Levy advise the defendant that he should have no contact with anyone who could potentially be a witness in his case.

The surety, Mr. Zapas, contends that at the time he agreed to sign the Bond, he understood that he was securing only Stathakis' appearance in court and was not informed of any of the other conditions. However, as noted, the courts have found that forfeiture is appropriate when a defendant violates any other conditions of release, such as the "break no laws" condition. See United States v. Vaccaro, 51 F.3d at 192-93; United States v. Santiago,

14

826 F.2d at 505; United States v. Gigante, 166 F.R.D. at 4 (collecting cases). The government

contends that because the prohibition against interfering with a witness' testimony is set forth

as a standard condition of release, both the defendant and the sureties were on notice that the

Bond would be forfeited in the event of a violation. Although the prohibition against breaking

another law is set forth clearly on the reverse of the printed bond form, there is nothing on the

bond form itself which suggests that merely speaking to a prospective witness constitutes a

violation of the conditions of the Bond.

The Bond, which is a standard form disseminated by the Administrative Office of the

Courts and modified by the Board of Judges of the Eastern District of New York, contains

certain set language. On the face of the bond form, there is standard language that appears

directly above the lines provided for the signatures of the sureties, which provides as follows:

> The undersigned defendant and sureties jointly and severally
> acknowledge that I/we and my/our personal representatives, jointly
> and severally are bound to pay to the United States of America the
> sum of $5,000,000. The undersigned agree(s) that this obligation is
> secured with his/her/their interest in the following property
> ("Collateral") which he/she/they represent is/are free and clear of
> liens, except as otherwise indicated . . . .

(Bond at 1). Additional language appears below the sureties' signatures but before the line

indicated for the defendant's signature. This language advises the defendant of certain

conditions of release as follows:

> The Court has advised the defendant of the conditions of release per
> 18:3142(b)(1) and (b)(2). This bond is conditioned upon the
> appearance of the defendant and is subject to the Standard Conditions
> of Bond set forth on the reverse. If the defendant fails to appear as
> ordered or notified, or any other condition of this bond is not met, this
> bond shall be due forthwith.

15

(Id.) Immediately below this language and above the defendant's signature there is an acknowledgment that reads:

> I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth on the reverse of the form.

(Id.)

On the reverse side of the bond form, there appear three subheadings: "Standard Conditions of Release," "Special Conditions of Release," and "Advice of Penalties." Under the subheading "Standard Conditions of Release" are listed three conditions to which the defendant's release is subject: 1) defendant must advise the court, defense counsel and the U.S. Attorney of any change in address or telephone number; 2) the defendant shall appear as required for court proceedings; and 3) the "[d]efendant shall not commit any federal, state or local crime." (Bond at 2). There are further directions concerning defendant's requirement to appear and a warning that if the defendant "fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith." (Id.) Under the subheading "Special Conditions of Release," defendants who have been placed on home detention or subject to reporting to Pretrial Services are given certain instructions and warned as to the consequences if they fail to comply.

It is not until the last paragraph on the reverse side of the bond form, within the third subheading, "Advice of Penalties," that the defendant is advised that witness tampering is a criminal offense. (Id.) The subsection advises the defendant that if he or she violates "any of

16

the preceding conditions of release," a warrant will issue for his or her arrest and the

conditions of release will be reconsidered.  (Id.)  Among other potential penalties, the

defendant is advised that he or she could be prosecuted and sentenced up to ten years or fined

up to $250,000 for failing to appear.  (Id.)  The subsection then provides:

> The commission of any offense while on pretrial release may result
> in an additional sentence upon conviction . . . Defendant is advised
> that it is a criminal offense to intimidate or attempt to intimidate a
> witness, juror, or officer of the court, or to obstruct a criminal
> investigation, or to tamper with a witness, . . . or to retaliate against
> a witness . . . or to threaten or to attempt to do so.

(Id.)

Thus, while attempting to influence or tamper with a witness is a crime and violates

the "break no laws" provision of the Bond, there is nothing in the standard conditions of the

Bond that explicitly prohibits a defendant from speaking to or contacting a witness.  Indeed, a

close reading of Judge Go's opinion demonstrates that she based her decision to revoke bail

not on a finding that Stathakis violated the witness tampering statutes or the "break no law"

condition of the Bond, but rather because she found that Stathakis had violated the condition

imposed by Judge Bloom that he was to have no contact with witnesses.  Specifically, Judge

Go stated:

> [T]his Court finds by clear and convincing evidence . . . that
> defendant twice violated *the condition of release imposed by
> Magistrate Judge Bloom* . . . not to speak with any potential witness
> in the case . . . The Government's motion to vacate the prior order of
> release dated February 17, 2006, *as modified by Judge Bloom* . . . is
> granted.

(Go Order at 2-3)[13] (emphasis added).

The surety, Mr. Zapas, contends that at the time he signed the Bond, he was not informed of this condition. Instead, he contends that at the initial appearance before Judge Levy, "[i]t was made clear to me that the Appearance Bond I signed in court was only conditioned upon defendant's appearance and nothing else . . . [T]here was no question in my mind that my bond was only securing Larry's appearance in court." (Zapas May Decl. ¶ 33). While the standard conditions of the Bond prohibiting witness tampering are set forth on the Bond and were available to Mr. Zapas had he reviewed the bond form, there is nothing in the transcript of the arraignment proceedings before Judge Levy indicating that Zapas was advised or in any way placed on notice that the Bond would be forfeited if Stathakis simply communicated with any potential witnesses. Indeed, it was not until the November 21, 2006 bond revocation hearing that Stathakis was explicitly advised by the Honorable Judge Bloom that contact with potential witnesses in his case would result in his Bond being revoked.

Mr. Zapas claims that because he was not present at the proceeding before Judge Bloom when this condition was added, and because he was not provided with notice of the hearing, he cannot be held responsible for defendant's violation of this condition. He contends that this lack of notice and consent with regard to the new condition relieves him of his obligations on the Bond:

> I never agreed to the additional conditions that I am told were

---

[13]Citations to "Go Order" refer to the order by the Honorable Judge Go granting the government's motion to revoke bond filed on February 8, 2007.

> imposed upon Larry by Judge [Lois][14] Bloom . . . on November 21,
> 2006, where . . . a condition of bail was added which prohibited Larry
> from speaking with any potential witnesses. I absolutely and
> unequivocally did not and would not have consented or agreed to this
> additional condition.

(Gardner Decl., Ex. E ¶ 2).

Based on a review of the transcript of the November 21, 2006 proceeding, it appears

that Mr. Zapas was correct that he was not present at the proceeding. Indeed, Stathakis'

counsel, Mr. Gardner, has represented that Zapas was not present at the proceedings before

Judge Bloom. (Gardner Decl. ¶ 12; see also Nov. 2006 Tr.). Moreover, the government's

papers submitted in support of the earlier motion to revoke bail do not indicate that notice was

given to the sureties. Taken as a whole, the evidence currently on record supports Zapas'

contention that he was not given notice of and did not consent to the bond condition added by

Judge Bloom. Moreover, while notice of a bond modification can be presumed where there is

a close familial relationship between the surety and bonded defendant, see United States v.

Zhang, 2000 WL 1532951, at *2 (finding notice unnecessary where the defendant and surety

resided together), here the relationship between Zapas and the defendant appears to be a

friendly business relationship stemming from periodic contacts at foreclosure auctions.

(Zapas May Decl. ¶ 14). Unlike a close familial relationship where notice can be inferred,

here notice was necessary before Zapas could be bound to the new bond conditions. Mere

contact with witnesses, unless explicitly made a condition at the time of the bail hearing, is

not a crime in itself and therefore, contrary to the government's posture, cannot be inferred

---

[14]The Declaration contains a typographical misspelling of Judge Bloom's name.

from the standard language of the Bond.

There is little question that the new condition was a material modification of the Bond, as it was the focal point of the bond revocation motions filed by the government and was characterized by Judge Bloom as "putting more pressure on the [defendant]" when added. More importantly, it served as the basis for Judge Go's order that defendant's Bond be revoked. The Court would be hard pressed to find that the new condition did not materially increase Zapas' risk on the Bond.

Upon examination of the evidence on record, it appears that the condition violated by the defendant was added as a material modification of the Bond, one that increased the sureties' risk. A surety's notice and consent are required before such conditions are binding upon him or her. See United States v. Gambino, 17 F.3d at 574. Failure to provide notice and consent to the surety can result in the surety being relieved of its obligation on the bond. See id. Since the evidence on record indicates that Zapas was not given notice of and did not consent to the newly added condition, the Court finds relief from the obligations on the Bond is appropriate.

## CONCLUSION

The government's motion to forfeit the bond is denied and the request of Mr. Zapas that he be granted a satisfaction of judgment with regards to his existing confession of judgment and to set aside the forfeiture pursuant to Rule 46(f)(2)(B) of the Federal Rules of Criminal Procedure is granted. The Clerk is directed to enter judgment in favor of surety John

Zapas and to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
      October 24, 2007

_____
Cheryl L. Pollak
United States Magistrate Judge