UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                        :
UNITED STATES OF AMERICA      :                    NOT FOR PUBLICATION
                                        :
                                        :                    MEMORANDUM AND ORDER
    - against -                         :
                                        :                    04-CR-790 (CBA)
                                        :
LARRY STATHAKIS,                :
                                        :
                Defendant.          :
                                        :
-----------------------------------------------------x

AMON, United States District Judge:

Before this Court is the government's motion, pursuant to Federal Rule of Criminal

Procedure 32.2(b)(2), for the entry of a preliminary order of forfeiture in the total sum of

$2,849,789.00 against defendant Larry Stathakis ("Stathakis"). The government claims that

these assets may be forfeited as the proceeds of bank fraud and conspiracy to commit bank fraud,

and that other properties owned by Stathakis may be substituted and forfeited in satisfaction of a

judgment against him. Stathakis, who waived his right to have this matter determined by a jury,

argues that the government has failed to meet its burden to obtain a judgment of forfeiture with

respect to all but two loans.

I.      **Background**

On July 10, 2004, Larry Stathakis was indicted with co-defendants Evangelos Gerasimou

and George Gerasimou on one count of bank fraud, in violation of 18 U.S.C. § 1344, and one

count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Angelo Gerasimou

subsequently pled guilty to one count of bank fraud, and George Gerasimou is currently a

fugitive in Greece.

1

Stathakis was later indicted on a superseding indictment, which contained three counts of bank fraud, relating to Fleet Bank, ABN Amro and CrossLand Savings, respectively, as well as one count of conspiracy to commit bank fraud. Following a jury trial, Larry Stathakis was convicted of the Fleet Bank and ABN Amro bank fraud charges, as well as conspiracy to commit bank fraud charge. He was acquitted of bank fraud charge relating to CrossLand.

The government seeks forfeiture of the proceeds from fourteen bank loans obtained from Fleet Bank and one bank loan obtained from ABN Amro. The government asserts that Stathakis personally participated in thirteen of the fourteen Fleet Bank loans and the ABN Amro loan, and contends that Stathakis is responsible for the proceeds of the remaining loans as reasonably foreseeable proceeds of the conspiracy in which he participated. Reducing this amount by forfeitures previously rendered by co-conspirators Kally Vandoros and Angelo Gerasimou, the government asserts that it is entitled to a money judgment in the amount of $2,849,789.00.

In addition, the government maintains that, despite its due diligence, it cannot locate the proceeds of the frauds constituting the money judgment. Accordingly, the government seeks to attach substitute assets. The government asserts that Stathakis has an ownership interest in a number of properties and seeks forfeiture of these properties to satisfy the judgment against him.

The fraudulent loans as well as their associated properties, banks, and additional information are listed in the table below.[1] Witnesses at trial and the asset forfeiture hearing have provided testimony. All loans marked with (T) were testified to at trial:

---

[1] Loan T8 is omitted from the following table because Stathakis was acquitted of bank fraud relating to that loan, which was allegedly secured from CrossLand Savings in the amount of $285,000. For consistency with the exhibits presented to the Court, the rest of the loans' numbers have been retained.

| Loan | Address | Strawman | Bank | Posed as borrower | Loan amount |
|---|---|---|---|---|---|
| T1 | 36-2312th Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T2 | 20-29 41st Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T3 | 11-49 Welling Ct | Nikos Domatsos | Fleet | Costas Philippou (T) | $240,000 |
| T4 | 68-15 76th Street | Nikos Domazos | Fleet | Ilyas Patsiouris (T) | $200,000 |
| T5 | 32-54 85th Street | Jimmy Gerasimou | Fleet | | $86,000 |
| T6 | 57-12 Xenia Street | Jimmy Gerasimou | Fleet | | $95,000 |
| T7 | 111-12 42nd Avenue | Jimmy Gerasimou | Fleet | Nicholaos Mavrakis (T) | $240,000 |
| T9 | 32-54 85th Street | Jimmy Gerasimou | ABN AMro | Nicholaos Mavrakis (T) | $292,500 |
| 10 | 108-50 45th Road | Nikos Damastosos | Fleet | | $239,500 |
| 11 | 32-28 97th Street | Nikos Damastosos | Fleet | | $239,800 |
| 12 | 103-18 Martense Avenue | Frank Mantaleros | Fleet | George Moutopoulos | $249,000 |
| 13 | 5815 38th Avenue | Nikos Mantaleros | Fleet | John Geroulis | $239,900 |
| 14 | 111-28 37th Avenue | George Koronatos | Fleet | | $199,950 |
| 15 | 2124 30th Road | Angelos Gatos | Fleet | Angelo Gerasimou | $222,700 |

| 16 | 108-19 44th Avenue | Elias Zikas | Fleet | | $224,891 |

## II.    Findings of Fact

### 1.    Evidence elicited at trial

At trial, witnesses testified about eight fraudulent loans obtained by or on behalf of Stathakis, seven mortgage loans from Fleet Bank and one loan from ABN Amro.

### 1.    Kally Vandoros (Testimony on loans T1 through T7)

At trial, Kally Vandoros, a licensed mortgage broker and the owner of a business, Norkem Plus, testified that Stathakis organized a plan to obtain fraudulent home equity lines of credit ("HELOCs") from Fleet Bank.  (Tr. 78; 81.)  According to Vandoros, beginning in September of 2002, she began to help Stathakis file loan applications containing false information in order to obtain mortgage loans.  (Tr. 82; 91.)  Vandoros testified that Stathakis told her that he owned the properties used to secure the loans, but that the properties were held under other people's names.  (Tr. 91.)  The loan applications were made in these names and contained false income and employment information.  (Tr. 82-83.)  Vandoros explained that the false information, such as the name, social security number, income, employer, and address and value of the loan property, was initially supplied by Stathakis but that, over time, she began to provide the false information herself.  (Tr. 82-83, 96-97.)  One of the employers used in the false applications was LS Property Management, a company owned by Stathakis.  (Tr. 97.)

Vandoros assisted in securing multiple loans for several non-existent loan applicants.  (Tr. 121.)  In the process for applying for each loan, the bank would occasionally ask Vandoros for additional documentation of the applicant's financial status, such as tax returns, pay stubs, or

4

W-2 forms. When this occurred, Vandoros would call Stathakis, who would supply the requested forms, personally delivering the forms to Vandoros. (Tr. 100-01.) On other occasions, Vandoros would prepare a W-2 for the application herself. (Tr. 100.) Vandoros identified Trial Exhibit 2-D and 4-E, in the names of "Nikos Domastos" and "Nikos Domazos", as examples of a tax form given to her by Stathakis to support fraudulent loan applications. (Tr. 102-04.)

If a loan was approved, the bank would request additional documentation, including an insurance binder and certificate of insurance, and two pieces of identification from the borrower. (Tr. 104.) Vandoros testified that the proof of insurance was always supplied by Stathakis. (Tr. 105; 107.) Vandoros identified trial exhibits 4-C and 5-B as insurance binders, in the names of "Nikos Domazos" and "Jimmy Gerasimou", which were supplied to her by Stathakis.

Vandoros also testified that on a number of the fraudulent loans, Stathakis provided her with the name of the borrower and the borrower's social security number. (Tr. 112.) He also provided her with credit reports. (Tr. 113.)

Once Fleet Bank approved the loans and additional documentation was provided, the loan closing would be held. Although Vandoros testified that normally, when she brokered a loan, she would go to a closing on the fraudulent loans herself, on occasion Stathakis asked her to send one of her employees, Eleni Pinellis. (Tr. 113-14.) Vandoros testified that Stathakis paid Pinellis one thousand dollars in cash for each closing Pinellis attended and that, on many occasions, Vandoros witnessed the payments. (Tr. 114.)

Vandoros testified that after the loan closing, Fleet Bank issued a checkbook to either Pinellis or Vandoros. (Tr. 115.) Vandoros would then call Stathakis, who would make out a check to Vandoros or her company from the check book for $10,000, Vandoros' agreed-upon

fee, and take the remaining checks. (Tr. 115-16.) On several occasions, Stathakis asked

Vandoros to write checks out for him to pay his bills. Stathakis would bring a stack of bills to

Vandoros, along with pre-signed checks, and would have her make out the checks. (Tr. 117-18;

Trial Exhs. 4I-4BB.)

Vandoros testified that she worked on approximately fifteen loans for Stathakis in this

fashion. (Tr. 93; 121.) She identified seven of those loans at trial. These loans included

properties at the following locations and in the following amounts:

| Loan | Address | Strawman | Bank | Posed as borrower | Loan amount |
|------|---------|----------|------|-------------------|-------------|
| T1 | 36-2312th St | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T2 | 20-29 41st St | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T3 | 11-49 Welling Ct | Nikos Domatsos | Fleet | Costas Philippou (T) | $240,000 |
| T4 | 68-15 76th St | Nikos Domazos | Fleet | Ilyas Patsiouris (T) | $200,000 |
| T5 | 32-54 85th St | Jimmy Gerasimou | Fleet | | $86,000 |
| T6 | 57-12 Xenia St | Jimmy Gerasimou | Fleet | | $95,000 |
| T7 | 111-12 42d Ave | Jimmy Gerasimou | Fleet | Nicholaos Mavrakis (T) | $240,000 |

Vandoros testified that a Fleet Bank representative called her and informed her that a

number of checks from the Fleet Bank loans were being cashed in Atlantic City, New Jersey.

(Tr. 121.) When Vandoros confronted Stathakis, he made it clear that he was in control of all of

the loan proceeds. When Vandoros informed Stathakis of the bank's concerns about the checks

going to Atlantic City, Stathakis became nervous, and instructed Vandoros not to speak with anyone about the loans. (Tr. 125.)

## 2. Costas Phillipou (Testimony on loans T1, T2, and T3)

Costas Phillipou testified that he signed documents using the strawman name "Nikos Domastos" to secure three fraudulent loans. These loans included properties at the following locations and in the following amounts:

| Loan | Address | Strawman | Bank | Posed as borrower | Loan amount |
|------|---------|----------|------|-------------------|-------------|
| T1 | 36-2312th Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T2 | 20-29 41st Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T3 | 11-49 Welling Court | Nikos Domatsos | Fleet | Costas Philippou (T) | $240,000 |

Phillipou, a resident of Cyprus, was visiting family in Queens when he agreed to perform construction work for Stathakis. (Tr. 156-59.) Stathakis asked Phillipou to give him with identification-type photographs, ostensibly to provide Phillipou with identification that would permit him to work unhindered in the United States and send money to Cyprus. (Tr. 159; 161.) A short time later, while in Stathakis' office, Stathakis showed Phillipou an identification card bearing the name of a different person, "Nikos Domastos." (Tr. 159-60; Trial Exh. 13). Phillipou questioned why the card and bank account were being opened in this other name, but was reassured by Stathakis that it was "okay." (Tr. 161-62.) Stathakis had Phillipou practice signing the name "Nikos Domastos" a number of times and then told Phillipou that he would meet him the next day and take him to a bank.

The next day, Phillipou met Stathakis and a woman named "Eleni" in Astoria. (Tr. 168.) Phillipou later identified this woman as Eleni Pinellis. (Tr. 630.) Stathakis instructed Phillipou to sign papers at the bank using the name "Nikos Domastos." (Tr. 162-163.) Stathakis stayed outside the bank in his car while Eleni accompanied Phillipou into the bank. Phillipou signed documents, which he identified at trial as Exhibits 1A and 1C. (Tr. 163-64.) These documents related to Loan T1 and involved property at 36-2312th Street. (Trial Exhs. 1A, 1B, 1C.) Phillipou and Eleni then left the bank and were driven away by Stathakis. (Tr. 165.) Phillipou testified that Stathakis subsequently had him sign $149,800 in checks disbursing funds. (Tr. 165-66; Trial Exhs. 1D-1G).

Phillipou testified that on a second occasion, Stathakis brought him and Eleni to the same bank and instructed Phillipou to again sign papers as "Nikos Domastos." (Tr. 167-68). As before, Stathakis stayed in the car while the papers were signed. (Tr. 168.) Phillipou identified Trial Exhibit 2C as the documents he signed on the second occasion. (Tr. 168.) Trial Exhibit 2C is a mortgage document related to Loan T2, secured by 20-29th Street. (Trial Exh. 2C.)

Phillipou testified that, on a third occasion, Stathakis called him at home in Cyprus and claimed there was still money in the bank under the name "Domastos." (Tr. 169-71.) Phillipou testified that Stathakis asked him to come back to sign for its release and paid for his ticket to the United States. (Tr. 169-70.) Upon his arrival in the United States, Phillipou was met by George Gerasimou. (Tr. 170; 185.) The next morning, George Gerasimou and Phillipou met Stathakis at his office. (Tr. 170.) Gerasimou and Phillipou left this meeting with the Domastos identification card, and proceeded to the bank, where Phillipou again signed documents in the name of "Nikos Domastos." (Tr. 170-71; Trial Exh. 3C.) The documents Phillipou signed related to Loan T3

and property located at 11-49 Welling Court.  After giving Phillipou $2,000, George Gerasimou

explained that he was bringing the rest of the money to Stathakis. (Tr. 187-88.)

Phillipou testified that the identification card bearing the name "Nikos Domastos" was

always in Stathakis' possession, when not used at closings.  (Tr. 185.)

### 3.  Nikos Mavrakis (Testimony on Loans T7 and T9)

Nikos Mavrakis testified that he signed documents using the strawman name "Jimmy

Gerasimou" to secure two fraudulent loans.  These loans included properties at the following

locations and in the following amounts:

| T7 | 111-12 42d Avenue | Jimmy Gerasimou | Fleet | Nicholaos Mavrakis (T) | $240,000 |
| T9 | 32-54 85th Street | Jimmy Gerasimou | ABN AMro | Nicholaos Mavrakis (T) | $292,500 |

Mavrakis explained that he met Stathakis through his wife, Angela, and that he was

introduced to George Gerasimou by Stathakis' business partner, Angelo Gerasimou.  (Tr. 212-

14.)  Mavrakis testified that George Gerasimou asked him for some passport type photos, and

that thereafter Stathakis drove him and George Gerasimou to an office on Long Island.  (Tr. 214-

216.)  During the drive, George Gerasimou stated that he needed Mavrakis to sign papers under

the name "Jimmy Gerasimou" to help save the home of George's cousin, who was out of the

country.  (Tr. 216-217.)  Mavrakis testified that when George stepped out of the car, Stathakis

urged him to sign the papers.  (Tr. 217.)  Mavrakis then entered the office building with George

Gerasimou where they signed papers for a loan.  Mavrakis identified these papers as those

corresponding to Loan T9, the ABN Amro loan in the amount of $292,500 secured by 32-54 85th

Street.  (Tr. 218-218; Trial Exh. 9D, 36.)

On a second occasion, George Gerasimou called Mavrakis and asked him to meet Stathakis. (Tr. 218.) After speaking to Stathakis, Mavrakis met him and Eleni Pinellis in Long Island City. Stathakis gave Mavrakis an envelope and told him to go into the bank with Eleni and to sign as "Jimmy Gerasimou." (Tr. 222.) Mavrakis did as Stathakis instructed. When he came out of the bank to meet with Stathakis, Stathakis told him that he was going to see George Gerasimou. (Tr. 223). Mavrakis testified that Gerasimou called him a few days later and was upset because the bank seemed to have refused the loan. (Tr. 223-34.)

On a third occasion, shortly after the second strawman signing, George Gerasimou called Mavrakis again. He asked Mavrakis to meet Stathakis, who would accompany him to a bank to sign as "Jimmy Gerasimou." (Tr. 224.) Stathakis then called Mavrakis to confirm the arrangement. (Tr. 224.) Stathakis gave Mavrakis the address of a different bank, and Stathakis and Eleni met Mavrakis outside the bank. (Tr. 225.) Stathakis was inside a car with Spiros Patsiouras, who motioned Mavrakis over and handed him an envelope. (Tr. 226-27.) Mavrakis entered the bank with Eleni and signed loan documents as "Jimmy Gerasimou." (Tr. 227; Trial Exh. 7C.) Mavrakis identified these papers as those corresponding to Loan T7, the Fleet Bank loan in the amount of $240,000 secured by 111-12 42nd Avenue. (Tr. 227-30; Trial Exh. 7C.)

### 4. Ilias Patsiouras (Testimony on Loan T4)

Ilias Patsiouras, who is married to Kally Vandoros, testified that he signed documents using the strawman name "Nikos Domazos." The documents signed by Patsiouras involved a loan for the following property and amount:

| T4 | 68-15 76th Street | Nikos Domazos | Fleet | Ilyas Patsiouris (T) | $200,000 |
|----|-------------------|---------------|-------|---------------------|----------|

Patsiouras testified that Stathakis told him that a friend of his was out of the country and that he needed bank documents signed under a power of attorney.  (Tr. 254; 256-57.)  Stathakis drove Patsiouras to a bank, along with Eleni Pinellis.  (Tr. 258-59; 629-30.)  At the bank, Stathakis then told him that things had changed and that he should go into the bank and sign as "Nikos Domazos." (Id.)  Stathakis had Ilias Patsiouras practice the "Nikos Domazos" signature before going into the bank.  (Tr. 260-61.)  Patsiouras then went into the bank with Pinellis and signed the documents as "Domazos."  (Tr. 261-62; Tr. Trial Exh. 4D.)  Patsiouras identified the documents that he signed as those corresponding to a Fleet Bank loan in the amount of $200,000 Fleet Bank, secured by 68-15 76th Street.  (Tr. Exh. 36; Trial Exh. 4D.)  He also testified that on two separate occasions, Stathakis had sign him blank checks drawing loan money from the account to pay Stathakis' bills.  (Tr. 263-64; 266-67; Trial Exh 4I-4BB.)

### 5.      May Chean, Number One Insurance Brokerage

Many of the insurance binders used in connection with the fraudulent loans came from Number One Insurance Brokerage.  May Chean, the owner of Number One, testified that she issued several insurance binders for Larry Stathakis.  (Tr. 428-29, 433.)  Chean also testified that she issued insurance binders for several "friends" of Stathakis.  However, Chean never met those people, but rather was provided information for these people by  Stathakis.  (Tr. 428.)  She verified the information for some of these friends over the phone.  (Tr. 431-32.)  Chean identified three insurance binders as looking like those her company issued, but with altered type, including a binder for Nikos Damastos, Nikos Domazos, and Jimmy Gerasimou.  (Tr. 429-31; Trial Exhs. 1-B, 4-C, 7-B.)  In particular, she testified, that although her company had issued insurance binders for Nikos Damastos, Nikos Domazos and Jimmy Gerasimou, her company had not issued those particular insurance binders, with those particular coverage amounts.  (Tr. 430-31; 438-39.)  The

insurance binders identified by Chean include were used to secure the following loans:

| T1 | 36-2312th Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T4 | 68-15 76th Street | Nikos Domazos | Fleet | Ilyas Patsiouris (T) | $200,000 |
| T7 | 111-12 42d Avenue | Jimmy Gerasimou | Fleet | Nicholaos Mavrakis (T) | $240,000 |

Vandoros explained that that she had no direct dealings with Number One Insurance Brokerage. (Tr. 108.) Chean confirmed this, stating that she never heard of Vandoros. (Tr. 433-34.)

### 6.  Peter Gubing, Sunrise Credit

Vandoros testified that Stathakis gave her credit reports for certain loan applicants. (Tr. 113.) Vandoros explained that when these reports were ordered by LS Property, that name would appear on the top of the report. (Id.) Peter Gubing, a representative of Sunrise Credit confirmed that Sunrise had a Larry Stathakis, at LS Property Management, as customer/subscriber. (Tr. 343, 346, 350; Trial Exh. 28 at Sun 6-7.) He also testified that a subscriber at LS Property Management, using the name "Larry," had ordered credit reports and credit checks on "Nikos Damatsos" in October 2002, and February, March, and April of 2003. (Tr. 346-349; Trial Exh. 28 at Sun 1, 8, 9, 12.) These reports were contemporaneous with the three loans applied for and made to the strawman "Nikos Damatsos," Loans T1, T2, T3. (Trial Exh. 29A, Loan application (October 15, 2002); Tr. Exh. 30, Applications of December 11, 2003 and March 11, 2003.) Sunrise Credit records document that "Larry" at LS Property Management ordered three credit reports on "Nikos Domazos" in early February, 2003, just prior to the February 13, 2003 application for the "Nikos Domazos" loan. (Exh. 28, Sun 13-14; Exh. 36; Exh. 4A.)

### 7.  Leon Sarao, Trump Taj Mahal

Leon Sarao, an employee of an Atlantic City casino, the Trump Taj Mahal, confirmed that Stathakis lost over $1.2 million at that casino during 2003, the period when many of the loans in question were made. (Tr. 310.) Stathakis also had hundreds of thousands of dollars of gambling debts at other area casinos at this time. (Tr. 319-321).

B.     **Facts elicited at the asset forfeiture hearing**

At the asset forfeiture hearing, FBI Agent Mark Petruzzi, who investigated Stathakis for two years, testified regarding seven additional Fleet Bank loans obtained by or on behalf of Stathakis, Angelo Gerasimou, and George Gerasimou. These included loans on the following properties, in the listed names and amounts:

| Loan | Address | Strawman | Bank | Posed as borrower | Loan amount |
|------|---------|----------|------|-------------------|-------------|
| 10 | 108-50 45th Road | Nikos Damastosos | Fleet | | $239,500 |
| 11 | 32-28 97th Street | Nikos Damastosos | Fleet | | $239,800 |
| 12 | 103-18 Martense Avenue | Frank Mantaleros | Fleet | George Moutopoulos | $249,000 |
| 13 | 5815 38th Avenue | Nikos Mantaleros | Fleet | John Geroulis | $239,900 |
| 14 | 111-28 37th Avenue | George Koronatos | Fleet | | $199,950 |
| 15 | 2124 30th Road | Angelos Gatos | Fleet | Angelo Gerasimou | $222,700 |
| 16 | 108-19 44th Avenue | Elias Zikas | Fleet | | $224,891 |

1.     **"Nikos Damastosos" (Loans 10, 11)**

Agent Petruzzi testified that Fleet Bank had identified two loans to "Nikos Damastosos" as

possibly fraudulent.  These included loans on the following properties in the listed amounts:

| 10 | 108-50 45th Road | Nikos Damastosos | Fleet | | $239,500 |
| 11 | 32-28 97th Street | Nikos Damastosos | Fleet | | $239,800 |

At the asset forfeiture hearing, Agent Petruzzi testified that Vandoros confirmed to him that a loan secured by property at 108-50 45th Road was one of the fraudulent Fleet Bank loans she applied for on behalf of Stathakis.  (AF Tr. 11-12.)  Agent Petruzzi also testified that Vandoros identified documentation supplied to her by Stathakis in connection with this loan, namely an insurance binder purportedly from Number One Insurance Brokerage, and an income statement for "Nikos Domastosos."  (AF Tr. 13-15, 24-25; 109-112; Exhs. AF 11, 12, 13; Exh. AF 21*;* Exh. Bank Documents, Damastosos Loan 1, p. 156.)  Agent Petruzzi also testified that Mike Sideris and Mabel Barriga, who were employed by Stathakis, maintained the property at 108-50 45th Road for Stathakis and that they collected and delivered rents from that address to Stathakis.  (AF Tr. 14; 25-26.)  The payout to Stathakis from this fraudulent loan was $239,500.  (AF. Tr. 16; 30-31).

Agent Petruzzi further testified that Fleet Bank identified another loan to "Nikos Damastosos," secured by property at 32-28 97th Street, as a possibly fraudulent loan.  (AF Tr. 17; 31.)  Vandoros informed Agent Petruzzi that she had submitted a fraudulent application for this loan on behalf of Stathakis and identified a Number One Insurance Brokerage binder for this property that she was given by Stathakis.  (AF Tr. 32-33; AF Exh. 14 at 1075.)   The binder indicates that it came from Stathakis' business, LS Property Management.  (AF Tr. 32-33.)  In addition, Mike Sideris confirmed that he had made repairs to the property at 32-28 97th Street on behalf of Stathakis.  (AF. Tr. 32.)  Finally, an agent at the Social Security Administration informed Agent Petruzzi that no person existed who has the name "Nikos Damastosos" and the birth date and social

security number given on the Fleet Bank application for that property. (AF. Tr. 34.) The proceeds paid out on this loan were $239,800. (AF Exh. 21.)

## 2. "Frank Mantaleros" (Loan 12)

Agent Petruzzi testified that a person named George Moutopoulos confessed that he had posed as "Frank Mantaleros" in order to obtain a Fleet Bank loan at the request of George Gerasimou. (AF Tr. 41-43.) The loan involved the following property and amount:

| 12 | 103-18 Martense Avenue | Frank Mantaleros | Fleet | George Moutopoulos | $249,000 |

According to the FBI report of the interview with Moutopoulos, Moutopoulos stated that he signed papers at a Fleet Bank, using the name Frank Mantaleros, at George Gerasimou's request. (Id.) He also identified an ID for "Frank Mantaleros" as bearing his photograph and stated that he had provided passport photos to George Gerasimou, in return for payment, ostensibly to help someone in Greece. (AF Exhs. 3, 15.) Moutopoulos further stated that he had discussed the Frank Mantaleros loan with Angelo Gerasimou and had told Angelo Gerasimou that law enforcement had contacted him about the loan. Angelo replied that "Larry Stathakis had gone to Greece and left Angelo with a mess." (AF Exh. 15 at 1077.)

In addition, Kally Vandoros provided Agent Petruzzi with a Sunrise Credit report on "Frank Mantaleros" which was used in the loan application process. (AF. Tr 40-41; AF Exh. 2.) Vandoros was given the credit report by Stathakis to assist in the application process. (Id.) The credit report indicates that it is "Prepared for LS Property Management, Attention Larry." (Id.) Agent Petruzzi also testified that either Kally Vandoros or Ilias Patsiouras had provided him with a fraudulent alien identification card for "Frank Mantaleros," who had obtained the card from somebody at LS

Property Management.  (AF Tr. 37-40; AF Exh. 1).

Fleet Bank paid out $249,000 in proceeds of the Frank Mantaleros loan, made on property located at 103-18 Martense Avenue.  (AF Tr. 44; AF Exhs, 2, 21.)  When entering a plea of guilty to conspiracy to commit mortgage fraud, Angelo Gerasimou allocuted to having received $712,000 in proceeds from fraudulent loans.  The parties do not dispute that the loan connected to the Martense Avenue property was one of the loans for which Angelo Gerasimou received the proceeds. (AF Tr. 98-99; 103).

### 3.    "Nikos Mantaleros" (Loan 13)

Agent Petruzzi established a Fleet loan to "Nikos Mantaleros" as a fraudulent loan. (AF Tr. 50.)  The loan involved the following property and amount:

| 13 | 5815 38th Ave | Nikos Mantaleros | Fleet | John Geroulis | $239,900 |
|----|---------------|------------------|-------|---------------|----------|

Kally Vandoros provided Agent Petruzzi with a Sunrise Credit report for "Nikos Mantaleros," prepared for "Larry" at LS Property Management.  (AF. Tr. 47-48; AF Exh. 3).  Kally Vandoros stated that she received the form from LS Property Management to assist in the loan process for this fraudulent loan.  (AF Tr. 48.)  Agent Petruzzi testified that a person named John Geroulis confessed that, at the request of Angelo Gerasimou, he had posed as "Nikos Mantaleros" in order to obtain a fraudulent Fleet loan, ostensibly to help someone in Greece.  (AF Tr. 49; AF Exh. 16).  Eleni Pinellis accompanied Geroulis into Fleet Bank to the loan closing.  (AF. Exh. 16, at 0178). Angelo Gerasimou also accompanied Pinellis and Geroulis to the closing.  (Id.)  Agent Petruzzi established that Fleet disbursed proceeds of $239,900 on this loan.  (AF Tr. 49, 51; AF Exhs. 3, 21.)  The parties do not dispute that Angelo Gerasimou received the proceeds of this loan. (AF Tr. 98-99; 103.)

### 4.    "George Koronatos" (Loan 14)

Fleet identified a loan made to "George Koronatos" as a potentially fraudulent loan.  (AF Tr. 51).  The loan involved the following property and amount:

| 14 | 111-28 37th Avenue | George Koronatos | Fleet | | $199,950 |
|---|---|---|---|---|---|

Kally Vandoros provided Agent Petruzzi with a copy of a Sunrise Credit report on "George Koronatos" that she had received from Larry Stathakis at LS Property Management. (AF 51-52; AF Exh. 4.)  The report states that it was prepared for "Larry" at LS Property Management.  (AF Exh. 4.)  The Koronatos loan file, offered at the asset forfeiture hearing, established that the proceeds of the Koronatos loan, secured by 111-28 37th Avenue, were $199,950.  (AF Tr. 53-54; 56; AF Exh. 4, 21).

### 5.    "Angelo Gatos" (Loan 15)

Agent Petruzzi also identified a Fleet Bank loan to "Angelo Gatos" as a fraudulent loan obtained by the Stathakis conspirators.  The loan involved the following property and amount:

| 15 | 2124 30th Road | Angelos Gatos | Fleet | Angelo Gerasimou | $222,700 |
|---|---|---|---|---|---|

Kally Vandoros provided Agent Petruzzi with a Sunrise Credit report for "Angelo Gatos" that she had been given by Stathakis.  (AF. Tr. 55- 56;60; AF Exh. 5.)  The report indicates that it was prepared for "Larry" at LS Property Services.  (AF Exh. 5.)  Agent Petruzzi obtained a copy of a driver's license from the New York State Department of Motor Vehicles with the name "Angelo Gatos" and a photograph of Angelo Gerasimou.  (AF Tr. 56-57; AF Exh. 17.)  Upon his arrest, Angelo Gerasimou admitted to posing as Angelo Gatos.  (AF Tr. 58.)  The proceeds of the Gatos Fleet Bank loan, secured by 2124 30th Road, were $222,700.  (AF. Tr 58; AF Exh. 21.)  The parties

do not dispute that Angelo Gerasimou received the proceeds of this loan.  (AF Tr. 98-99; 103).

### 6.    "Elias Zikas" Loan

Fleet Bank identified a loan to "Elias Zikas" as potentially fraudulent to Agent Petruzzi. (AF Tr. 61-62.)   The loan involved the following property and amount:

| 16 | 108-19 44th Ave | Elias Zikas | Fleet | | $224,891 |
|----|-----------------|-------------|-------|--|----------|

Kally Vandoros confirmed that she applied for this loan on behalf of Stathakis.  (AF. Tr. 62.)  Kally Vandoros provided Agent Petruzzi with a Sunrise Credit report for "Elias Zikas," with a listed address of 108-19 44th Avenue, that she had received from Stathakis.  (AF Tr. 60-61; AF Exh 6.)  That report indicates that it was prepared for "Larry" at LS Property Services.  (AF Exh. 6.)  Stathakis also gave Vandoros a forged insurance binder for the secured property, 108-19 44th Avenue.  (AF Tr. 64; AF Exh. 19.)  The proceeds of this loan were $224,891.  (AF Tr. 62.)

## III.    Discussion

Section 982(a)(2)(A) of Title 18 subjects to criminal forfeiture any property that constitutes or is derived from proceeds traceable, either directly or indirectly, to a violation of the bank fraud statute, 18 U.S.C. § 1344, or to a conspiracy to commit such offense, if the criminal activity affected a financial institution.  The forfeiture of property under section 982 is governed by Federal Rule of Criminal Procedure 32.2(b)(1) and by 21 U.S.C. § 853.  See 18 U.S.C. § 982(b) (incorporating by  reference 21 U.S.C. § 853).  Both section 853(a) and section 982(a)(2) provide for forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."  21 U.S.C. § 853(a); 18 U.S.C. § 982(a)(2).

Once a defendant is convicted of an offense on proof beyond a reasonable doubt, the government must establish by a preponderance of evidence that, as a result of the offense, the

property at issue is subject to criminal forfeiture. United States v. Fruchter, 411 F.3d 377, 383 (2d Cir. 2005) ("Booker and Blakely [do not] require proof beyond a reasonable doubt in open-ended punishment schemes, such as [criminal] forfeiture."); see also Libretti v. United States, 516 U.S. 29, 49 (1995). Under Rule 32.2(b)(1), the Court is required to determine the amount of money the defendant will be ordered to pay and whether there is a sufficient nexus between the property sought to be forfeited and the offense of conviction. The Court makes this determination based upon the evidence in the record of the criminal trial and evidence presented at a hearing after the verdict. See Fruchter, 411 F.3d at 384.

In addition to entering judgment of forfeiture against specific properties, the Court may enter a money judgment against a defendant. See United States v. Robilotto, 828 F.2d 940, 949 (2d Cir. 1987) (affirming the district court's entry of a money judgment for the amount of illegal proceeds); United States v. Bermudez, 413 F.3d 304, 307 (2d Cir. 2005).

(affirming forfeiture money judgment in money laundering case; United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006) (affirming forfeiture money judgment in racketeering case); United States v. Vampire Nation, 451 F.3d 189, 200-201 (3d Cir. 2006) (affirming forfeiture money judgment in mail fraud case); United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006); United States v. Schlesinger, 396 F. Supp. 2d 267, 273 (E.D.N.Y. 2005) (Spatt, J.) (forfeiture money judgment in amount equal to amount laundered).

Furthermore, the imposition of joint and several liability on a monetary judgment of criminal forfeiture is appropriate. United States v. Benevento, 836 F.2d 129, 130 (2d Cir. 1988) (affirming imposition of joint and several liability on defendant under 21 U.S.C. § 853(a)(1) rather than limiting forfeiture to property acquired solely or wholly by defendant). In United States v. Hurley, the First Circuit approved a trial court's holding that coconspirators should forfeit

laundered funds obtained by other members of the conspiracy "to the extent that they were reasonably foreseeable to the particular defendant." 63 F.3d 1, 22 (1st Cir. 1995). The court reasoned that because conspirators are liable for the foreseeable criminal conduct of their coconspirators, so too should they be required to forfeit the proceeds foreseeably reaped by other members of the conspiracy. Id. In addition, the government need not establish that the defendant has actual possession of proceeds in order to permit forfeiture of the proceeds of the conspiracy. As the court explained in United States v. Coleman Commercial Carrier, Inc., 232 F. Supp. 2d 201, 204 (S.D.N.Y. 2002), "[c]riminal forfeiture is designed to be punitive. Requiring coconspirators to forfeit reasonably foreseeable proceeds of their criminal activity furthers this legislative purpose. . . .To hold otherwise would encourage strategic behavior on the part of coconspirators to hide funds and thwart the purpose of the criminal forfeiture statute." Thus, coconspirators are liable jointly and severally to forfeit the reasonably foreseeable proceeds of their criminal activity. Id.

Finally, Section 853 also provides redress should the Government be unable to recover the directly forfeitable assets or money judgment due to an act or omission by the defendant. See 21 U.S.C. § 853(p). If the Government cannot collect a money judgment because, for example, the property (1) cannot be located upon the exercise of due diligence; (2) has been transferred, sold, or deposited with a third party; or (3) has been placed beyond the jurisdiction of the Court, then the Court can order the forfeiture of other property of the defendant up to the amount of the money judgment. Id.; see also Hall, 434 F.3d at 58-59 n.7; United States v. Numisgroup Int's Corp., 169 F. Supp. 2d 133, 136-37 (E.D.N.Y. 2001); United States v. Bennett, 97-CR-639, 2003 WL 22208286 at *1 (S.D.N.Y. Sept. 24, 2003).

Third party claims to the substitute assets subject to forfeiture, if any, are adjudicated as set forth in 21 U.S.C. § 853(n) and Rule 32.2. Following the entry of an order of forfeiture, the

government must publish notice of the intended forfeiture.  21 U.S.C. § 853(n)(1).  Any person, other than the defendant, asserting an interest in the property to be forfeited must petition the Court within thirty days of receipt of notice of intended forfeiture for a hearing to determine the validity of his or her interest in the property.  21 U.S.C. § 853(n)(2); see also Fed. R. Crim. P. 32.2(c).

### A.     Uncontested loans

Following a jury trial, Stathakis was convicted of defrauding ABN Amro and Fleet Bank. At trial, Nikos Mavrakis testified that George Gerasimou and Stathakis asked him to sign papers in connection with the ABN Amro loan.  Because the jury convicted Stathakis on the ABN Amro bank fraud count, Stathakis concedes that the jury must have credited Mavrakis' testimony.  Accordingly, Stathakis does not contest a forfeiture judgment of $292,500 on the basis of the ABN Amro loan.

Similarly, Stathakis does not contest a forfeiture judgment on the basis of the Fleet loan made to "Jimmy Gerasimou" in the amount of $240,000, as Mavrakis also testified that Stathakis and George Gerasimou asked him to sign documents in connection with this loan.  Thus, the Court finds that the government has proven by a preponderance of the evidence that the proceeds of the ABN Amro loan secured by property at 32-54 85th Street and the Fleet Bank loan secured by property at 111-12 42nd Avenue are subject to criminal forfeiture. The proceeds of these loans total $532,500.

### B.     Stathakis is liable for the proceeds of fraudulently obtained loans

The evidence elicited at trial and at the asset forfeiture proceeding establish, by a preponderance of the evidence, that Stathakis was either directly involved in obtaining a number of fraudulent loans or was a party to the conspiracy in which fraudulent loans were acquired, and the loan funds were reasonably foreseeable proceeds of the conspiracy.  See United States v. Bloome, 777 F. Supp. 208, 210-11 (E.D.N.Y. 1991) (holding defendants subject to forfeiture for property

attained in a burglary accomplished before they joined the conspiracy); see also United States v. Rea, 958 F. 2d 1206, 1214 (2d. Cir. 1992) (A defendant may be legally responsible under conspiracy liability for both the acts of co-conspirators prior to, as well as after that particular defendant's entry into a conspiracy, even if the defendant cannot be held retroactively liable for the substantive offenses underlying the conspiracy prior to his entry); United States v. Blackmon, 839 F.2d 900, 908-09 (2d. Cir. 1988). Accordingly, under section 982(b), he may be held liable for the proceeds of those loans.

The government has established that each of the following loans was obtained as part of a single conspiracy. Although not all of the members of the conspiracy participated in obtaining each loan, it is clear from the evidence that there was a common goal: namely, obtaining HELOCs on properties through strawmen, using false identities, false credit reports, and false insurance binders. See Rea, 958 F.2d at 1214 (it is not necessary to establish that co-conspirators agreed on the details of a conspiracy, so long as they have agreed on the essential nature of the plan). The loans were obtained using a common plan or scheme, by a team of five recurring persons. Each of the strawmen were approached by one of three persons: George Gerasimou, his brother Angelo Gerasimou, and Angelo Gerasimou's partner at LS Property Management, Stathakis. Often, the strawman was first asked to provide passport photos, either for a small fee or as a favor. Sometimes the strawman was told that the photos were to help a cousin or a friend in Greece. After providing the photos, the strawman would be asked to sign some documents. Often the strawman was told that these documents would help a friend or cousin in Greece obtain a loan or keep his home. The strawman was usually driven to the bank by either George Gerasimou or Stathakis, or both. The same person, Eleni Pinellis, usually accompanied the strawman into the bank in order to sign the documents. Finally, Kally Vandoros brokered the loan with the bank, primarily using false

information provided by Stathakis, although she sometimes obtained the false material herself. That false information usually consisted of a Sunrise Credit report, ordered by "Larry" at LS Property Management, and a fraudulent insurance binder, ostensibly provided by Number One Insurance Company. In addition, many of the strawman names used were variants on one of a small number of names. Thus, the coconspirators repeatedly used the first name "Nikos," the surnames "Domastos" (or a variant thereof), and "Mantaleros," and the name "Jimmy Gerasimou."

In each of the following loans, the government has shown Stathakis' involvement in fraudulently obtaining the loan. Furthermore, for each of the following loans, the government has shown at least one, if not several, earmarks of the Stathakis-Gerasimou-Vandoros conspiracy:

| Loan | Address | Strawman | Bank | Posed as borrower | Loan amount |
|------|---------|----------|------|-------------------|-------------|
| T1 | 36-2312th Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T2 | 20-29 41st Street | Nikos Domatsos | Fleet | Costas Philippou (T) | $150,000 |
| T3 | 11-49 Welling Ct | Nikos Domatsos | Fleet | Costas Philippou (T) | $240,000 |
| T4 | 68-15 76th Street | Nikos Domazos | Fleet | Ilyas Patsiouris (T) | $200,000 |
| T5 | 32-54 85th Street | Jimmy Gerasimou | Fleet | | $86,000 |
| T6 | 57-12 Xenia Street | Jimmy Gerasimou | Fleet | | $95,000 |
| 10 | 108-50 45th Road | Nikos Damastosos | Fleet | | $239,500 |
| 11 | 32-28 97th Street | Nikos Damastosos | Fleet | | $239,800 |

| 12 | 103-18 Martense Avenue | Frank Mantaleros | Fleet | George Moutopoulos | $249,000 |
|----|------------------------|------------------|-------|--------------------|----------|
| 13 | 5815 38th Avenue | Nikos Mantaleros | Fleet | John Geroulis | $239,900 |
| 14 | 111-28 37th Avenue | George Koronatos | Fleet | | $199,950 |
| 15 | 2124 30th Road | Angleos Gatos | Fleet | Angelo Gerasimou | $222,700 |
| 16 | 108-19 44th Avenue | Elias Zikas | Fleet | | $224,891 |

Accordingly, as discussed below, the Court finds that Stathakis is liable for the proceeds of each of the following loans.

### 1. Fleet Bank loans for 36-23 12th St., 20-29 41st Street, and 11-49 Welling Ct. (Loans T1, T2, T3)

According to the testimony of Costas Phillipou, three Fleet loans, secured by properties at 36-23 12th Street, 20-29 41st Street, and 11-49 Welling Court, and totaling $540,000, were obtained at Stathakis' direction. Stathakis attempts to discredit Phillipou's testimony by pointing out that when asked to identify signatures on bank documents from the three closings, Phillipou testified that in some instances he signed the name "Nikos Damastos" but in others he signed only the first name "Nikos" and the last name "Damastos" was in someone else's handwriting. Similarly, Phillipou admitted that he signed several checks drawn on the Nikos Damastos loan accounts but that he signed "Nikos" but that the name "Damastos" was not in his handwriting.

However, this does not indicate that Phillipou did not sign the bank loans in question, nor that he was lying when he indicated that he signed these loans at the direction of Stathakis. In addition, Phillipou's testimony was corroborated by the testimony of Kally Vandoros, who testified

that she brokered these three loans at the request of Stathakis, and by the fact that a Sunrise Credit report for "Nikos Domastos"was requested by the user "Larry" at LS Property Management on March 14, 2003.  Finally, this loan bears the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy, including the request for passport photos, the presence of Eleni Pinellis at the closing, Vandoros' role in brokering the loan, the Number One Insurance company binder, and the Sunrise Credit reports ordered by "Larry."  Accordingly, the Court credits the testimony of Phillipou and finds that the proceeds of these three Fleet Bank loans, totaling $540,000, are subject to criminal forfeiture.

### 2.        Fleet Bank loan for 68-15 76th St. (Loan T4)

Ilias Patsiouras testified that, at Stathakis' direction, he posed as strawman "Nikos Domazos", to obtain a $200,000 loan from Fleet Bank, secured by 68-15 76th Street.  This testimony was corroborated by Kally Vandoros, who testified that she brokered this loan at Stathakis' request. Stathakis seeks to discredit Ilias Patsiouras by pointing out that the address on the checks that he signed is 157-15 72nd Avenue in Queens, that a mailbox business was located at this address, and that this address was near where Ilias Patsiouras lived at the time.  Stathakis also points out that Ilias Patsiouras was unemployed in early 2003, when the crimes were allegedly committed, and that he had been unemployed since 2002. Stathakis further asserts that he began to work in 2003 for Vandoros at Norkem, but that he did so without a salary.  Stathakis also points out that Patsiouras married Vandoros in April 2004, and thus intimates that they were in collusion.

However, Vandoros testified after pleading guilty to conspiracy to commit mail fraud, and after she was sentenced.  Accordingly, she had no incentive to lie regarding Stathakis' role in the Fleet Bank fraud.  Furthermore, the testimony of Patsiouras and Vandoros is corroborated by the fact that a Sunrise Credit report was ordered for the name "Nikos Domazos" by Larry at LS

Property Management in February 2003.  Finally, this loan bears the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy, including the request to help a friend in Greece, the presence of Eleni Pinellis, Vandoros' role in brokering the loan, the Number One Insurance company binder, and the Sunrise Credit reports ordered by "Larry."   Accordingly, the Court credits the testimony of Patsiouras and Vandoros and finds that the proceeds of these Fleet Bank loan, worth $200,000, are subject to criminal forfeiture.

### 3. Fleet Bank loans for 32-54 85th St. and 57-12 Xenia St. (Loans T5, T6)

The government produced evidence at trial directly linking Stathakis to the Fleet Bank loans made to "Jimmy Gerasimou" and secured by 32-54 85th Street and 57-12 Xenia Street.  Those loans totaled $181,000.  The government produced evidence that the deed to the property at 32-54 85th Street was transferred from Stathakis to "Jimmy Gerasimou" in September 2000.  Kally Vandoros testified that she brokered loans secured by 32-54 85th Street and 57-12 Xenia Street  for Stathakis.  The name "Jimmy Gerasimous" also appears on insurance forms for 57-12 Xenia Street.  The government has shown the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy, including the use of the name "Jimmy Gerasimou," Vandoros' role in brokering the loan, the Number One Insurance company binder, and the Sunrise Credit reports ordered by "Larry."  Accordingly, the Court credits the testimony of Vandoros and finds that the proceeds of these Fleet Bank loans, worth $181,000, are subject to criminal forfeiture.

### 4. Fleet Bank loans for 108-50 45th Rd. and 32-28 97th St. (Loans 10, 11)

At the asset forfeiture hearing, Agent Petruzzi testified that Fleet Bank identified as possibly fraudulent two loans to "Nikos Damastosos," secured by property at 108-50 45th Road and 32-28

97th Street, for a total of $489,300.[2]  Agent Petruzzi linked these properties to Stathakis through

Kally Vandoros, who confirmed to she brokered these loans on behalf of Stathakis.  Vandoros gave

Agent Petruzzi documentation supporting these loans, including an income statement for "Nikos

Domastosos" and fraudulent insurance binders.  The binder for 32-28 97th Street indicates that it

came from Stathakis' business, LS Property Management.  In addition, Mike Sideris told Agent

Petruzzi that he maintained both of these properties for Stathakis, while Mabel Barriga told Agent

Petruzzi that she collected and delivered rents for the property at 108-50 45th Road for Stathakis.

Finally, the government has shown the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy,

including the use of the name "Nikos Damastosos," Vandoros' role in brokering the loan, and the

Number One Insurance company binder.  Accordingly, the Court finds that the government has

established by a preponderance of the evidence that the proceeds of these loans, totaling $489,300,

are subject to criminal forfeiture.

### 5.    Fleet Bank loan for 103-18 Martense Ave. (Loan 12)

Agent Petruzzi testified that George Moutopoulos confessed that, at the request of George

Gerasimou, he had posed as strawman "Frank Mantaleros" in order to obtain a Fleet Bank loan for

$249,000 secured by 103-18 Martense Avenue.  Agent Petruzzi confirmed Stathakis's role in this

loan through Kally Vandoros, who provided Agent Petruzzi with a Sunrise Credit report on "Frank

Mantaleros," which she had received from Stathakis, and which was used in the loan application

process.  The credit report indicates that it is "Prepared for LS Property Management, Attention

---

[2]    The Court notes that under Rule 32.2, asset forfeiture is a sentencing issue.  As such, the government's burden of proof is a preponderance of evidence. Consequently, the Court concludes that, as with other sentencing issues, reliable hearsay is admissible. United States v. Carmona, 873 F.2d 569, 574 (2d Cir. 1989). Since the Court finds the underlying statements in Agent Petruzzi's testimony reliable, it will consider his testimony along with the other evidence already in the record.

Larry."  In addition, Moutopoulos stated that when he discussed the Frank Mantaleros loan with Angelo Gerasimou, and had told Angelo Gerasimou that law enforcement had contacted him about the loan, Angelo replied that "Larry Stathakis had gone to Greece and left Angelo with a mess."  Thus, the government has shown the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy, including the use of the last name "Mantaleros" and the Sunrise Credit reports ordered by "Larry." Accordingly, the Court finds that the government has established by a preponderance of the evidence that the proceeds of these loans, $249,000, are subject to criminal forfeiture.

### 6. Fleet Bank loan for 5815 38th Ave. (Loan 13)

Agent Petruzzi testified that a $239,900 Fleet loan to "Nikos Mantaleros," secured by 5815 38th Avenue, was a fraudulent loan.  Kally Vandoros provided Agent Petruzzi with a Sunrise Credit report for "Nikos Mantaleros," which she received from Stathakis, and which was prepared for "Larry" at LS Property Management.   In addition, the government has shown the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy, including the fact that the strawman was accompanied to the bank by Angelo Gerasimou and Eleni Pinellis, the use of the name "Nikos Mantaleros" and the Sunrise Credit reports ordered by "Larry."  Accordingly, the Court finds that the government has established by a preponderance of the evidence that the proceeds of the loan, $239,900, are subject to criminal forfeiture.

### 7. Fleet Bank loan for 111-28 37th Ave. (Loan 14)

Fleet identified a loan made to "George Koronatos", secured by 111-28 37th Avenue, as potentially fraudulent.  Kally Vandoros provided Agent Petruzzi with a copy of a Sunrise Credit report on "George Koronatos" that she had received from Larry Stathakis at LS Property Management.  The report states that it was prepared for "Larry" at LS Property Management.  Once again, this is an earmark of the Stathakis-Gerasimou-Vandoros conspiracy.   Accordingly, the Court

finds that the government has established by a preponderance of the evidence that the proceeds of the loan, $199,950, are subject to criminal forfeiture.

### 8. Fleet Bank loan for 2124 30th Rd. (Loan 15)

Agent Petruzzi identified a Fleet Bank loan to "Angelo Gatos", secured by 2124 30th Road, as a fraudulent loan obtained by the Stathakis conspirators. Agent Petruzzi obtained a copy of a drivers license with the name "Angelo Gatos" and a photograph of Angelo Gerasimou, and upon his arrest, Angelo Gerasimou admitted to posing as Angelo Gatos. In addition, Kally Vandoros provided Agent Petruzzi with a Sunrise Credit report for "Angelo Gatos" and identified it as one provided to her by Stathakis. The report also indicates that it was prepared for "Larry" at LS Property Services. Once again, this is an earmark of the Stathakis-Gerasimou-Vandoros conspiracy. Accordingly, the Court finds that the government has established by a preponderance of the evidence that the proceeds of the loan, $222,700, are subject to criminal forfeiture.

### 9. Fleet Bank loan for 108-19 44th Ave (Loan 16)

Finally, Fleet Bank to Agent Petruzzi identified a loan to "Elias Zikas", secured by 108-19 44th Avenue, as potentially fraudulent. Kally Vandoros confirmed that she applied for this loan on behalf of Stathakis and provided Agent Petruzzi with a Sunrise Credit report for "Elias Zikas," with a listed address of 108-19 44th Avenue, that she had received from Stathakis. That report indicates that it was prepared for "Larry" at LS Property Services. Stathakis also gave Vandoros a forged insurance binder for the secured property, 108-19 44th Avenue. Thus, this loan has several of the earmarks of the Stathakis-Gerasimou-Vandoros conspiracy, including Vandoros' role in brokering the loan, the Sunrise Credit report for "Larry," and the forged Number One Insurance binder. Accordingly, the Court finds that the government has established by a preponderance of the evidence that the proceeds of the loan, $224,891, are subject to criminal forfeiture.

In sum, the Court concludes, based on the evidence presented at trial and the asset forfeiture hearing, that Stathakis has forfeiture liability for fifteen loans for which he an his co-conspirators fraudulently applied. The total amount of Stathakis' liability, based on the proceeds paid out by both Fleet and ABN Amro banks, totals $3,069,241.00. Reducing this amount by the amount forfeited by his co-conspirators, Vandoros and Angelo Gerasimou, Stathakis' must forfeit $2,849,316.00.[3]

### C.        The government has demonstrated that it cannot locate the properties

As discussed above, the government may substitute other property of the defendant if it unable to recovery directly the forfeitable assets or money judgment. 21 U.S.C. § 853(p). In this case, the government claims that it has been unable to locate the monies at issue and asks the Court to find that substitution of the defendant's properties is appropriate. The Court concludes that the government has credibly represented its efforts to locate the proceeds of the fraudulently obtained loans and that substitution is required.

At Stathakis' asset forfeiture hearing, FBI Agent Robert Cappadona testified that, despite due diligence, the government was unable to locate the proceeds of the fraudulently obtained loans, or United States currency in the amount of the loans, in the possession of Stathakis. (AF Tr. 119-28.) In his testimony, Agent Cappadona stated that he attempted to identify assets that Stathakis owned or controlled from his fraudulent activity. (AF Tr. 120-21.) He subpoenaed various financial institution and reviewed the documents provided. (AF Tr. 121.) All accounts in Stathakis' name had zero balances and other accounts the government suspected Stathakis owned or

---

[3] The Court finds some discrepancies in the Governments calculations of Stathakis' liability. For the purposes of this decision, the Court bases its calculations on Exhibit 1 presented to the Court at the Asset Forfeiture Hearing as well as representations in the parties' briefs. Discrepancies have been resolved in favor of the defendant.

controlled had minimal balances. (Id.) Accordingly, the government has exercised due diligence in attempting to locate the proceeds of the fraudulently obtained loans.

**D.      Substitution is appropriate**

Since the government has demonstrated that it is unable to locate the proceeds of the fraudulently obtained loans, it may substitute other property owned by Stathakis to satisfy the judgment against him.  See 21 U.S.C. § 853(p)(2).  The government seeks to have seven properties deemed substitute assets to be forfeited and sold, with the proceeds put towards the money judgment against Stathakis.  For the reasons stated below, the Court finds that the government has proven Stathakis' ownership in each of the properties it wishes to substitute, and may substitute them to fulfill the money judgment against Stathakis.

### 1.      42-76 Hunter Street, Long Island City, New York

This property may be substituted as Stathakis represented in his bond proceedings that he was the owner of this property.  (AF Tr. 132-32; AF Exh. 10, Order Setting Conditions of Release and Bond.) The Court finds Stathakis has an ownership interest in the property.  The seizeable equity in this property may total $350,000.  (AF Tr. 124.)

### 2.      42-55 27 Street, Long Island City, New York

Stathakis stated under oath at his bond hearing that he was the owner of this property. (Bond Tr. 22-26; AF Tr. 131-32; AF Exh. 10.)  The Court finds Stathakis has an ownership interest in the property.  The seizeable equity in this property may total $350,000.  (AF Tr. 124.)

### 3.      20-29 41st Street, Astoria, New York

Stathakis, as president of the Elms Funding Corporation, owned this property and made a sham transfer to the non-existent "Nikos Domastos" in February of 2000 to secure a fraudulent HELOC from Fleet Bank under the name of "Nikos Domastos." The transfer was established by

bank and mortgage records provided at trial and by the testimony of trial witness Costas Phillipou. Phillipou testified that he signed for a HELOC on the property at Stathakis' request. (Tr. 167-69, Exh. 2A-F; AF Tr. 141-42.) Furthermore, FBI Agent Joseph Moriarty testified at the asset forfeiture hearing that, based on his investigation, he had concluded that Stathakis has an ownership interest in the property. (AF Tr. 138; 142-43.) Agent Moriarty participated in the investigation of Larry Stathakis. (AF. Tr. 130.)

The Court finds that Stathakis has an ownership interest in the property. The seizeable equity in this property may total $261,500. (AF Tr. 128.)

### 4. 24-14 97th Street, Corona New York

Stathakis owned this property, as president of Allied Builders and Construction Corporation. Spiros Patsiouras testified at trial that Stathakis transferred the property to him, but that Stathakis remained the actual owner of the property. (Tr. 599; AF Tr. 144.) According to Patisouras' testimony, the HELOC on the property went to Stathakis. (Tr. 599.) Furthermore, Agent Moriarty testified at the asset forfeiture hearing that, based on his conversation with Patsiouras and further investigation, Stathakis has an ownership interest in the property. (AF Tr. 144-45.)

The Court concludes that Stathakis had an ownership interest in the property. The seizeable equity in this property may total $286,500. (AF Tr. 123.)

### 5. 200-36 46th Avenue, Bayside, New York

In 2003, the deed to this property was transferred from Anna Marie Gerasimou, the wife of Evangelos Gerasimou, Stathakis' former business partner to "George Koronatos". "George Koronatos" was a nonexistent strawman utilized by Stathakis to fraudulently obtain a home equity line of credit on another property as proven at trial. The government contends that Stathakis has at least partial ownership interest in the property because the evidence at trial showed that Stathakis

ran a credit report on "George Koronatos" at Stathakis' management company, LS Property Management. (AF Tr. 146-47.) Agent Moriarty testified at the asset forfeiture hearing that, based on his investigation, Stathakis has an ownership interest in the property. (AF Tr. 148.) Agent Moriarty specifically represented that there is no such person by the name of "George Koronatos" whose name is currently on the deed for the property.

The Court concludes that Stathakis has an ownership interest in the property. The seizeable equity in this property may total $50,200. (AF Tr. 123.)

### 6. 133-05 14th Avenue, College Point, New York

Stathakis owned this property under the name "Nikos Damastosos", a strawman utilized in other fraudulent bank loans engineered by Stathakis as proven at trial. According to the trial testimony of Michael Sideris, Stathakis as "Nikos Damastosos" transferred the property to the non-existent "Michael Siferis". (Tr. 465-69.) Mr. Sideris testified that he purchased the property as "Michael Siferis" with Stathakis' assistance and that he had given the deed to the property back to Stathakis after the purchase. (Id.) At the asset forfeiture hearing, Agent Moriarty further testified that he had spoken with Mr. Sideris and that Mr. Sideris confirmed he did not own the property at this time. (AF Tr. 152.) Furthermore, Agent Moriarty testified at the asset forfeiture hearing that, based on these efforts, he had concluded that Stathakis has an ownership interest in the property. (Id.) The Court find that Stathakis has an ownership interest in the property.

### 7. 133-01/05 Higgins Drive, Flushing, New York

This property may be substituted as Stathakis affirmed his ownership, under oath, in pleadings before the State Supreme Court for the County of Queens and through his counsel during the March 12, 2007 asset forfeiture hearing. (AF Tr. 134; 174; AF Exh. 8 at 895-923; AF Exh. 10.) The seizeable equity in this property may total $500,000. (AF Tr. 125.)

In sum, the Court has concluded that Stathakis has an ownership interest in the following properties: 42-76 Hunter Street, Long Island City, New York; 42-55 27th Street, Long Island City, New York; 20-29 41st Street, Astoria, New York; 24-14 97th Street, Corona, New York; 200-36 46th Avenue, Bayside, New York; 133-05 14th Avenue, College Point, New York; 133-01/05 Higgins Drive, Flushing, New York. The total, estimated value of the forfeited assets is approximately $1,798,200.[4] Accordingly, these properties may be substituted to satisfy the money judgment against Stathakis. The Court notes, however, that these properties may not be forfeited to the government before it has complied with the third party notification provisions of 21 U.S.C. Section 853(n) and Federal Rule of Criminal Procedure 32.2(c).

## CONCLUSION

For the aforementioned reasons, the Court finds that Stathakis has forfeiture liability for the proceeds of fourteen Fleet Bank loans and the ABN Amro loan for which he and his co-conspirators fraudulently applied. The Fleet Bank loan documents established that the total proceeds paid out by Fleet Bank on the fourteen loans established at trial and the asset forfeiture hearing was $2,776,741.00. In addition, the ABN Amro loan was worth for $292,500.00. However, this sum must be reduced by the by forfeitures previously rendered by co-conspirators Kally Vandoros and Angelo Gerasimou, or by $219,925.00. A preliminary order of forfeiture, ordering that Larry Stathakis forfeit $2,849,316.00 as said proceeds will be issued by this Court.

Furthermore, the government has demonstrated that it is unable to recover directly the

---

[4]     The government did not provide the Court with an estimated value for the property located on 133-05 14th Avenue, College Point, New York. As the government has represented that the total, best case scenario value of the substitute properties is significantly less than the judgment amount (AF Tr. 176.), the Count finds that this property may be substituted to satisfy the judgement against Stathakis.

forfeitable assets.  The seven properties discussed above may be substituted and forfeited, in

accordance with 21 U.S.C. Section 853(n) and Federal Rule of Criminal Procedure 32.2(c), to

satisfy the judgment against Stathakis.

SO ORDERED.

Dated: Brooklyn, New York
            February 13, 2008

Carol Bagley Amon
United Stated District Judge